## 25710.   JORDAN *v.* DOLVIN REALTY COMPANY.

DECIDED NOVEMBER 6, 1936.

*Tidwell & Brown,* for plaintiff in error.
*Clarke & Clarke,* contra.

BROYLES, C. J.   Dolvin Realty Company brought suit against William R. Jordan to recover a real-estate agent's commission on the sale of certain property in Atlanta, owned by Jordan. The court, trying the case without a jury, rendered judgment in favor of the plaintiff. The defendant's motion for new trial was overruled, and on this judgment he assigns error.

After a careful consideration of the entire record, we are convinced that the evidence presents a plain case of two agents having the property in question listed for sale; both attempted to sell it; one succeeded, and earned and was paid the commission; the other failed, and now asks that the owner be required to pay him a like commission, or, in other words, that the owner be required to pay a dual commission. The Dolvin Realty Company was represented in the negotiations by its agent, W. H. Cook. The purchaser, Mrs. Claude Dixon, negotiating through her brother, Luther Guess, finally bought the property through another real-estate agent, Ralph Martin, to whom the owner paid the commission of $425. The evidence shows that Cook, the agent of the

plaintiff, was the first to find Mrs. Dixon as a prospective purchaser, and that Cook had advertised the property and made efforts to sell it, but that he was unable to procure a sale. Finding the prospect and attempting to make the sale are not sufficient, in law, to justify payment of commissions to an agent. The *sale* of the property is what gets results for the owner and for the agent. To earn the commission, one must be the procuring cause. He must, during the agency, find a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner. Code (1933), § 4-213. The plaintiff and its agent did not do this. They tried to procure the sale of the property, but were unsuccessful. Since the procuring cause is a finding of fact, which could not be disturbed if based on conflicting evidence, we will discuss only the *undisputed* evidence which shows that the plaintiff was not the procuring cause of the sale. The undisputed evidence shows that the plaintiff, acting through its agent Cook, advertised for sale the property in question; that Mrs. Dixon, the purchaser, found Cook's card on another house, and telephoned Cook; that in the conversation Cook referred her to the property in question on Johnson Road, and told her the price; that she went out to see the property on Johnson Road, but did not decide to buy it, and left Atlanta, going back to Charlotte, N. C., where she lived, and leaving the matter of finding and buying a place with her brother, Luther Guess; that she had not concluded to purchase the place on Johnson Road before the second agent, Ralph Martin, took the matter up with her brother and procured the sale; that her brother, acting for her and after communicating with her, finally bought the property through Martin, with whom also the property was listed for sale; that Cook's exclusive agency to sell the property expired on September 27, and the contract of sale procured by Martin was not made until October 2, and the sale was consummated on October 14; that Cook never took the purchaser or her brother to see the property, and never saw them until after the sale; that Cook never presented to the owner or procured from the purchaser any contract of sale or any offer from her to buy the property; and that Cook admitted that he could not "put the sale over." The evidence fails completely to sustain the plaintiff's contention that Jordan, the defendant, Guess, the brother of the purchaser, and Martin, the real-estate agent, col-

luded for the purpose of defeating the rights of the plaintiff. It appears that Jordan's only object was to sell the property at a certain price, and he had nothing to gain by selling through one agent rather than another, the exclusive agency of Cook having been terminated. Martin tried to sell the property, as he had a right to do, because he wanted to earn the commission. Guess preferred to deal with Martin, because he was his friend. This is legitimate and not at all unusual in real-estate deals. Martin, because of the friendship of Guess, was able to procure and did procure the sale of the property to the sister of Guess. If Dolvin Realty Company, acting through its agent Cook, could not and did not procure the sale because Guess preferred to deal with Martin, Jordan was not responsible for such failure, and Dolvin Realty Company was not entitled to a commission.

Attention is directed to the following *undisputed* testimony of unimpeached witnesses: W. H. Cook, real-estate agent, who negotiated for the plaintiff company, and who was its witness: "I had exclusive sale on it until September 27, and I released it on September 27. . . As to Jordan and I *agreeing* that since I had not been able to do anything with it I had better let the thing rest and start over again, we had that conversation all right. . . As to why I did not prepare a contract and get Jordan to sign it at that time, and submit it to these people, *I never did see these women in person. . . I did not put it over. . .* I never did see Luther Guess [the purchaser's brother]. . . *Mrs. Dixon never did say that she would take that property. . .* Mrs. Dixon never did say that she would buy it. . . I said I did every thing I could, and I *could not put the deal through."* (Italics ours.) This evidence of Cook, the plaintiff's agent, shows that he was not the procuring cause of the sale, but, on the contrary, that he was unable to procure the sale of the property. W. R. Jordan, the defendant and seller, testified: "This contract was closed on October 14, and the contract was signed by me and her on October 2. . . I paid a commission to Ralph Martin. Nothing that Cook did or said, nor any information that he gave me at any time with reference to his dealings or his communications with Mrs. Dixon or Luther Guess, aided me in the final consummation of this deal; nothing that he did or said aided me in making up my mind about closing this deal between me and Mrs. Dixon. I am

positive it [the exclusive agency of Cook] terminated before October 2, before I got any contract on the house. . . The *first* contract submitted to me signed by Guess was not during the exclusive agency of Dolvin Realty Company. . . *I am positive no contract was brought to me while Dolvin had the exclusive agency."* (Italics ours.)

Luther Guess testified: "I am a brother of Mrs. Dixon who purchased the house in question. Mrs. Dixon came down to look at several houses; she was going to buy a home here in Atlanta; none of them attracted her more than the others; she went back to Charlotte *undecided* about anything, and she told me, if I found a place that we would be satisfied with, to let her know about it, and she would look into it and see if she would like to buy it herself. . . My mind had come to no decision about the purchase of any particular piece of property when my sister asked me to look at these various houses or any other houses. *Nothing said or done by Cook influenced or aided [me] anywise in making up my mind about purchasing this property.* I can't see that he had any influence whatever in the consummation of this deal, because Mrs. Dixon was not sold on the house when she left Atlanta the last time. [Cook's talk with her over the telephone was before she left Atlanta.] To the efforts Martin and I put forth to get my sister to buy this house—every offer I made, which of course was under the price they asked, I had to sell her on the idea of raising each time. . . I know I called her three times at the office, trying to get her to buy that place, since I felt it was the best buy she could make. . . I have no interest in the outcome of this case. . . As to my interest in this trade—I am living there; she bought the home for us; my only interest is in living there and in my sister; my interest was in buying the house from any agent I chose, and naturally I would rather buy it from somebody I knew; my friendship with Martin was my only interest in trading with him. . . As to my thinking the exclusive agency [of Cook] was terminated, the sign was down, and Martin's card was in the house; so I imagine he had the right to sell as well as anybody else. . . I felt like it was my privilege to deal with somebody I knew." (Italics ours.)

Mrs. Claude G. Dixon testified: "I purchased this property at No. 1669 [Johnson Road] from Mr. W. R. Jordan. . . I first

looked at a house on Rock Springs Road, and I found a card over there with Mr. Cook's name on it. . . When I came home I called Mr. Cook and asked him about the house on Rock Springs Road, . . and he said, 'Did you see the house on Johnson Road?' . . and he said the price was $8500. . . Then Sunday morning Mr. Cook asked if he could come out to show the property, and I was not interested in having any salesman show the property, and I told him so. Sunday morning I, my sister and some friends from Charlotte, and my sister-in-law came out and looked at this house, and Mr. Cook still *has not shown the house to me.* When I went back to Charlotte I got to thinking about it, that if this house had been built since January and had not been sold, I thought something was wrong with it. . . *I have never seen Mr. Cook before today* personally. The only conversation I had with him was over the 'phone. . . *Nothing Mr. Cook said or did influenced me in anywise in the purchase of this property.* . . Mr. Cook's negotiations had nothing to do with my buying the house. . . *I never did offer to purchase the property through Mr. Cook for $8500* [the price stipulated by the owner]. Nothing said or done by Cook influenced me to buy this property for $8500 from Jordan. . . So far as what Mr. Cook had to say, . . he was not there to show it to me on Sunday morning. I did not get the keys from him; the house was unlocked. *I was not interested in the house when I left Atlanta* [after talking with Cook over the telephone]. After I got back to Charlotte I thought the matter over, and nothing that Mr. Cook said or did influenced me in becoming again interested in the property, nor did any information he furnished have any influence in my again becoming interested. If I had been interested I would have written Mr. Cook, or if I had been interested in buying the place I would have had Mr. Cook come out and show it to me. . . I told him I didn't want him to, because I was not interested in getting a salesman to show the place." (Italics ours.)

It is evident from the undisputed testimony that after Mrs. Dixon learned the location and price of the property in question by telephoning Cook, she went out to see it, and then went back to Charlotte without having decided to buy and without having made Cook an offer, and that later Martin, negotiating through Mrs. Dixon's brother, succeeded in getting her interested in the

property and procured the sale. The fact that it took considerable persuasion and several telephone calls, as shown by the evidence, to get Mrs. Dixon to buy after Martin began negotiations, shows that she had not decided to buy the property up to that time. Cook, although the first to tell Mrs. Dixon about the property and to quote the price, was by no means the procuring cause of the sale. If such evidence makes out a case of procuring cause, it would never be safe for an owner of property to sell through any agent, except the first one who directed the prospective purchaser to the premises; and in the event the purchaser does not wish to deal with the first agent, the owner must lose his sale, or be subjected to the payment of a dual commission. If such evidence makes a case of procuring cause, all that an agent would have to do would be to direct a prospective purchaser to the property, quote him the price stipulated by the owner, notify the owner, and then sit back and wait for some one else to make the sale, feeling secure in the knowledge that his commissions are earned, regardless of who might consummate the sale. In *Doonan* v. *Ives,* 73 *Ga.* 295, it was held: "Real estate brokers having brought suit for commissions against the seller of a lot, claiming to have procured the purchaser, although the trade was consummated by the lot owner herself, it was admissible to prove by the purchaser that the brokers had no influence on him in the sale made to him. (a) Brokers in whose hands property is placed for sale, in order to earn commissions on account of the sale of such property, must either have sold it or been the procuring cause of the sale. If the purchaser who was spoken to by them had abandoned all idea of the trade, and they had no influence at all in bringing it about, they would not be entitled to commissions, although the purchaser may subsequently have bought from the owner." In *Hyams* v. *Miller,* 71 *Ga.* 608, it was held: "Where compensation is to be paid to a broker or real-estate agent by way of commissions, the *whole service or duty must be performed* before any right to commissions arises, unless the act of the principal has prevented the performance of it." (Italics ours.) The owner in the instant case did not prevent the performance of any contract, but on the contrary he accepted the first sales contract that was brought to him, which was in accordance with the stipulated terms of the sale. The case of *Gresham* v. *Lee,* 152 *Ga.* 829 (111 S. E. 404), cited by

counsel for the defendant in error, is distinguished by its facts from the instant case, in that in the *Gresham* case negotiations were still pending between the broker and the purchaser when the sale was closed through another broker. In the instant case the undisputed evidence is that no negotiations were pending between Cook and Mrs. Dixon at the time of the sale. The cases of *Craigmiles* v. *Steyerman,* 27 *Ga. App.* 14 (107 S. E. 386), and *Fox* v. *Von Kamp,* 52 *Ga. App.* 776 (184 S. E. 645), are substantially similar as to the facts and directly in point as to the principle involved in the case at bar; and under the ruling in those cases, the evidence in the instant case did not authorize a recovery by the plaintiff. The court erred in overruling the defendant's motion for new trial.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*