## 50783. PARRISH v. RAGSDALE REALTY COMPANY, INC. et al.

WEBB, Judge.

Parrish appeals from the grant of appellees' motion for summary judgment and the dismissal of his complaint with prejudice.

The amended complaint alleged in substance that Parrish was a licensed real estate broker; that he was employed by James B. Gilmore on behalf of Jabco Industrial Properties, Inc. to locate and arrange the purchase of a 540-acre industrial park from Southeast DeKalb Industrial Park, Inc.; that the fee to be paid him by the purchaser was $100 an acre; that he began negotiations with the seller, supplied Gilmore with information on the park and introduced Gilmore to the seller; that a contract was prepared and submitted to the seller for its approval about May, 1969 but the sale was not consummated; and that on August 10, 1972, Jabco Twenty-One, Inc., a wholly owned subsidiary of Jabco Industrial Properties, Inc. purchased the Park.

The complaint further alleged that appellees Jabco Industrial Properties, Inc., Ragsdale Realty Co., James B. Gilmore and Douglas Harris conspired to complete the sale but to avoid paying the agreed commission of $100 an acre to Parrish; that in furtherance of the conspiracy Jabco Twenty-One, Inc. was organized to complete the purchase of the park; that appellees wrongfully and fraudulently failed to contact Parrish to inform him that the sale was about to take place, since he was the procuring cause of the sale; that the fee of $54,000 was paid to Ragsdale Realty and divided in an unknown ratio among the appellees; and that since the sale as consummated was the result of the work and efforts of Parrish he was entitled to compensation in the amount of $54,000.

The appellees answered, denying the essential allegations, and moved for summary judgment based upon the pleadings, depositions and affidavits of the parties.

On appeal Parrish contends that the grant of the motion for summary judgment was erroneous because (1)

there are genuine issues of material fact as to the performance required of him in order to earn his commission; (2) the evidence, construed most favorably to him, would authorize a jury to find that the sale of the park was procured directly from his efforts within a reasonable time; (3) he, rather than Harris, acted as finder of the property and procured its sale; (4) he did not lose his right to compensation under his employment contract by not being present at all negotiations, or at the closing, or because the transaction was completed on terms different from those first proposed; and (5) there was a genuine issue as to whether Gilmore and Harris entered into a conspiracy to deprive him of his rightfully-earned commissions.

As we subsequently hold, these contentions are without merit. The deposition of Parrish established the following facts. During the period between 1966—1969 he did business as a sole proprietorship under the name of Parrish Realty, which was primarily engaged in selling land; his function and business was "acting as what would be considered a real estate broker." In 1968 Gilmore expressed to Parrish an interest in warehouse sites and also in purchasing an industrial park for Jabco. Parrish had learned in 1966 that William A. Kelly, the majority stockholder in Southeast DeKalb Industrial Park, was interested in selling the park and Gilmore expressed an interest in acquiring it when told it might be available. Parrish "went out, got the plat, got the sewer and water information . . . and all other real estate type documentation . . . the street layout and the railroad layout . . . I think I also got a topo map and presented these to Mr. Gilmore . . . I took him out and showed him the boundaries of the property, the various lots that could be considered . . . I introduced him to Mr. Kelly personally . . ."

Parrish and Gilmore verbally agreed that the commission, if the sale was put together, would be "$100 an acre on the park," and that the park consisted of "approximately 500-plus acres." The commission would have gone to Parrish Realty Company because it was a broker's commission rather than a finder's fee. Appellant had an "open listing" and would receive "a commission on

the sale of real estate."

However, Kelly rejected Gilmore's proposal the day it was presented in late 1968 or early 1969. Parrish had no subsequent dealings with any of the parties involved, and there were no further negotiations about the property until late in 1971 or early 1972.

Parrish was employed in 1969 by Stirling Homex Corporation and until July, 1972 sold modular construction in nine Southeastern States, working out of Montgomery, Alabama and Jackson, Mississippi. During this time he was in Atlanta only on weekends and did not have an office or a telephone listing for his real estate business, although his license was hung in the office of an attorney. The first time that Parrish had any knowledge or reason to believe that further negotiations might be taking place in regard to the Industrial Park was when he drove by it and "saw the sign on Interstate 20 that it had been acquired" by Jabco Twenty-One. Shortly thereafter, on October 15, 1973, the instant action was filed.

1. The motion to dismiss the appeal as to two of the appellees is denied.

2. Parrish contends that, construing the evidence most favorably toward him as the trial court was required to do, the oral contract between him and Gilmore was a "business opportunities" or "finder's fee" contract, which was fully performed. In support of his contention that such contracts have long been enforceable in Georgia he relies upon *Garrett v. Wall,* 29 Ga. App. 642 (116 SE 331).

However, in interpreting that case this court recently stated, quoting with approval from the annotation defining finder's fee contracts in 24 ALR3d 1160, that the validity of such contracts is fundamentally determined by rules applicable to contracts generally. *Pinkerton &c. Co. v. Atlantis Realty Co.,* 128 Ga. App. 662, 663 (197 SE2d 749). Thus the well-established rule that a broker must be the procuring cause in an eventual transaction in order to be entitled to a commission therefor (see, e.g., *Tidwell &c. Realty Co. v. Foster,* 123 Ga. App. 192 (1) (180 SE2d 259) and cits.) is applicable to finder's fee contracts. *Pinkerton &c. Co. v. Atlantis Realty Co.,* 128 Ga. App. 662, 663 (3), supra.

3. The deposition of Parrish clearly reveals that he

was not the procuring cause of the transaction in dispute here. "A broker with whom property is listed for sale does not make out a case of procuring cause . . . by merely showing that he first located the ultimate purchaser, if it further appears that without interference by the owner he was unsuccessful in bringing about an offer which could be consummated, and that the sale was made after he had abandoned his effort. [Cits.]" *Tidwell &c. Realty Co. v. Foster,* 123 Ga. App. 192, 193, supra. See also *Fields Realty &c. Co. v. Smith,* 123 Ga. App. 342 (180 SE2d 909).

4. Parrish having failed to establish that he was the procuring cause of the sale, which was necessary to entitle him to a commission, it follows that his argument that he rather than Harris or Ragsdale Realty was due the commission is without merit. Subsequent to Kelly's rejection of Gilmore's offer in behalf of Jabco there was a complete breakdown in negotiations and appellant made no effort to renegotiate a contract between the parties. Harris, however, was successful in putting together a sale some two years later and therefore he and his company, Ragsdale Realty, were entitled to the commission as a matter of law. *Girardeau & Saunders v. Gibson,* 122 Ga. 313 (50 SE 91); *Jordan v. Dolvin Realty Co.,* 54 Ga. App. 472, 477 (188 SE 304).

5. The appellant's arguments that he did not lose his right to compensation because he was not present at all negotiations, and the transaction was closed in his absence on different terms, cannot be sustained.

Appellant admits that he made no subsequent efforts to renegotiate the sale when the proposed contract was rejected in 1969. Furthermore, the variations between the terms of that first offer and the conditions of the 1972 sale are significant. The price per acre was increased from $5,100 to $7,500 (a total increase of $1,201,500 on the 524-acre tract ultimately purchased by Jabco Twenty-One). The amount paid by the purchaser at closing was increased from $109,140 in the 1969 offer to $1,363,607.25 under the requirements of the 1972 sale. Also, the inability of the purchaser in 1969 to obtain satisfactory financing caused that sale to fall through whereas in 1972 adequate financing was obtained.

Where, as here, an owner lists property for sale with

a broker and the broker procures a prospect, but the sale as contemplated is not consummated and the parties in good faith break off negotiations, the broker is not the procuring cause of the ultimate transaction and is not entitled to a commission. Code § 4-213; *Crutchfield v. Western Electric Co.,* 66 Ga. App. 161 (1) (17 SE2d 246); *Kenney v. Clark,* 120 Ga. App. 16 (2(a)) (169 SE2d 357).

6. The trial court correctly granted the appellees' summary judgment in regard to the allegations of conspiracy to deprive appellant of his commission. Not only was there no evidence of any conspiracy, there could have been none to deprive him of his commission' since under the facts and law he was not the procuring cause of the sale and therefore not entitled to the commission. See *Woodall v. McEachern,* 113 Ga. App. 213 (147 SE2d 659).

*Judgment affirmed. Bell, C. J., and Marshall, J., concur.*

Argued June 16, 1975 — Decided July 16, 1975.

*Lang & Broome, Edward Lang,* for appellant.
*Donner, Brown & Rosenbluth, R. Jeffrey Morrison, Robert W. Coleman, S. Phillip Heiner,* for appellees.