## 59231. HODSDON v. WHITWORTH et al.

McMURRAY, Presiding Judge.

In the purchase and sale of several tracts of land involving more than 600 acres located in Franklin County, Georgia, Stanley N. Hodsdon, as purchaser, conveyed by two separate deeds to secure debt to Whitworth Hatchery and Poultry Farm, Inc., the seller, two of the tracts of land, one being 50 acres, more or less, as shown by a certain plat and the other being 532.25 acres, more or less, as therein more particularly described, subject to a security deed from the seller to the Federal Land Bank of Columbia. Both of these instruments were styled as deeds to secure debt "With Power Of Sale" and had changes in the acceleration clause by adding the typewritten language "upon giving 30 days notice as shown above." In the typed portion under the description we find the following: "In the event of Grantor's default in payment of that note herein secured, Grantee shall take this property in satisfaction of that debt hereby secured and shall hold Grantor harmless for any deficiency. In the event of said default, Grantee shall give to Grantor 30 days written notice of his [its] election to declare Grantor's default in which time Grantor may bring payments current. After which time, should said payment not be made, Grantor shall quit claim to Grantee all of his remaining interest in said property." Thereafter, the printed language in the deeds giving the grantee (Whitworth Hatchery and Poultry Farm, Inc.) the power of sale had marks thereon (as if made with a pencil or ink) marking out, or with the intent to mark out, the power of sale contained therein. These

lines did not obliterate the language as to the power of sale but were slashes across and did contain in the margin initials of the Grantor and initials of grantee's president.

After advertisement of sale under the alleged power of sale in the deed to secure debt, the 50 acre tract was sold before the courthouse door and repurchased by the grantee and conveyed by deed dated February 7, 1978, recorded February 9, 1978, from the grantor by and through his attorney in fact (the grantee) to the grantee. Prior to foreclosure plaintiff had quit-claimed the 532.25 acre tract to defendant corporation on June 24, 1977.

Stanley N. Hodsdon, the purchaser of the properties, and the grantor in the above security deeds, after the fact of foreclosure brought an action for damages couched in three counts against the grantee, Whitworth Hatchery and Poultry Farm, Inc., and its president, individually. Plaintiff alleges in Count 1 that the defendants in conspiracy illegally and wrongfully foreclosed a deed to secure debt which by its plain terms contained no power of sale, seeking general damages ($30,000), punitive damages ($100,000), and attorney fees ($10,000). In Count 2 he alleged the publication of the foreclosure advertisement was done with knowledge of its falsity and that it injured plaintiff in his trade and business and was therefore libelous. Plaintiff sought general damages ($100,000), punitive damages ($100,000), and attorney fees ($10,000). In Count 3 plaintiff alleges the publication of the false advertisement by defendants held plaintiff out to the public in a false light and was an invasion of his right to privacy. Plaintiff sought general damages ($100,000), punitive damages ($100,000), and attorney fees ($10,000).

The defendants answered, admitting jurisdiction, the advertisement and foreclosure of the property which they alleged was in accordance with the power contained therein, but otherwise denied the claim and by counterclaim alleged that they had been irreparably harmed and damaged by reason of the malicious prosecution of this suit, seeking damages in the amount of $250,000 each, $20,000 attorney fees, and $23,800 with reference to the release price on a 28-acre tract of land which plaintiff refused to pay after demand.

After a trial, the court directed the jury to return a verdict for the plaintiff on defendants' counterclaim, and the jury (without direction) then returned a verdict for the defendants on the main action. Whereupon judgment was entered in favor of the defendants with the costs taxed against the plaintiff. Plaintiff appeals. *Held:*

1. The substance of this case is based upon the printed language, the typewritten language, and the markings with reference to whether or not the parties intended by them to strike from the deeds to secure debt the power of sale clause contained therein. Plaintiff contended and so testified that these marks were made for this purpose and that he so initialed same at the closing. The defendant president of the corporation testified that the plaintiff wanted 30 days notice inserted as to the time the grantee was required to give in declaring the entire debt to be in default, and this was the only change in the instruments which he initialed but that he never noticed nor understood the other markings to be the striking out of the power of sale contained in these deeds. The attorney who prepared these documents was called as a witness but no testimony was elicited with respect to the markings shown on the deed to secure debt.

The trial court in its instructions to the jury after the completion of the evidence charged that the court, as a matter of law, found the deed to secure debt (alleged to have been wrongfully foreclosed) "to not be un-ambiguous," and that it was a question of fact for the jury to decide whether the parties intended that the deed to secure debt "did contain or was to contain a power of sale or not, and that is a question of fact for you to determine."

Code § 38-502 states that all contemporaneous writings shall be admissible to explain each other and that parol evidence shall be admissible to explain all ambiguities, both latent and patent. The court allowed direct testimony by the plaintiff that the power of sale provision was stricken out and initialed by the parties on the date of closing, hence there was no power of sale contained in the deeds to secure debt. Plaintiff contends that there was no ambiguity and therefore any parol evidence with respect thereto was inadmissible, citing

*Pippin v. Brigadier Industries Corp.,* 150 Ga. App. 401, 403 (2) (258 SE2d 18). The defendant president, however, testified that he only agreed at the closing to the change of language which the plaintiff desired inserted with reference to notice and that he in nowise agreed to the striking out of the power of sale provisions therein. The trial court in its examination of the instruments was of the opinion that one could not ascertain with certainty the intentions of the parties with reference to the crisscross markings which could be inferred from the initials of the parties to disclose an intent to strike from the instruments the printed words. None of the printed language was obliterated from the instrument as this printed language was still legible. Hence the trial court held that the contemporaneous writings were ambiguous and allowed parol evidence to explain the ambiguity.

The trial court also refused to give plaintiff's request to charge which would have instructed the jury that the security deed was plain and unambiguous on its face and as a matter of law contained no power of sale. The law is clear that the construction of an agreement which is plain and unambiguous is a matter of law for the court. *Pisano v. Security Management Co.,* 148 Ga. App. 567, 568 (251 SE2d 798). See also *Hyman v. Horwitz,* 148 Ga. App. 647, 649 (252 SE2d 74).

It is likewise true that when a contract is partly printed and partly written the written part is entitled to more consideration. Code Ann. § 20-704 (Ga. L. 1964, pp. 414, 415). Generally, the case law has held the typewritten words of a contract are entitled to more consideration than the printed part. See *Buffalo Forge Co. v. Southern R. Co.,* 43 Ga. App. 445, 450 (159 SE 301); *Aetna Life &c. Co. v. Charles S. Martin Distributing Co.,* 120 Ga. App. 133 (2), 134 (169 SE2d 695); *Hamlin v. Timberlake Grocery Co.,* 130 Ga. App. 648, 652 (204 SE2d 442). And, written words "with pen and ink" are entitled to more consideration than the printed words. *Shackelford v. Fitzgerald,* 151 Ga. 35, 36 (105 SE 597); *Surles v. Milikin,* 97 Ga. 485, 486 (25 SE 322). The printed language containing the power of sale could have been in this instance completely obliterated so as to not leave the printed word, and this would have prevented any question

as to the intention of the parties.

However, in looking at the four corners of the instrument and more particularly the typewritten words which show clearly that in case of the grantor's default in payment of the note the grantee was to take the property in satisfaction of the debt after 30 days written notice of the election in which time the grantor might bring the payments current and after which time if said payments not be made the grantor "shall quit claim to Grantee all of his remaining interest in said property," it is quite clear from the initials and the stricken attempted obliteration of the power granted to the grantee to sell after advertisement, it was the intention of the parties to strike from the instrument the power of sale even though it was styled a deed to secure debt with power of sale. The instrument was not ambiguous and required no construction. It was a security deed without power of sale as to the right of the party to sell at public outcry which was stricken therefrom. See *Benefield v. Malone,* 112 Ga. App. 408 (145 SE2d 732); *Pisano v. Security Management Co.,* 148 Ga. App. 567, 568, supra; *Coggeshall v. Georgia Land &c. Co.,* 14 Ga. App. 637, 642-643 (82 SE 156); *Stanley v. Greenfield,* 207 Ga. 390 (2) (61 SE2d 818). Therefore, the trial court erred in refusing to hold that the security deed was plain and unambiguous on its face and as a matter of law contained no power of sale. The trial court also erred in allowing testimony to be presented to explain the alleged ambiguity where no ambiguity existed and likewise in refusing to charge the jury that the security deed was plain and unambiguous on its face and as a matter of law contained no power of sale. The trial court also erred in failing to give a written request of the plaintiff so as to eliminate the issue of ambiguity here and in allowing in evidence the preliminary contract which had been merged in the execution of the security deed at closing showing that the grantee was required in case of default to quitclaim the property to the grantor as the power of sale was stricken from the instrument.

2. As to the plaintiff's motions for directed verdict covering a number of items, it is clear from the above that there was an illegal foreclosure. Still, as to damages to the plaintiff's reputation, invasion of privacy and libel, these

issues remain for jury determination. An issue also remains for jury determination as to whether or not the indebtedness was prematurely accelerated, that is, whether or not the grantor had been given 30 days written notice of the grantee's election to declare the debt in default giving the grantor the opportunity to bring payments current and if said payments not be made grantor was to quitclaim to the grantee all of his remaining interest in said property. The deed secured an indebtedness of $42,500 due pursuant to the terms of a second note "executed this date by Grantor to Grantee in the amount of $328,712.50, this note being supplementary thereto." The trial court did not err in overruling the multi-headed motions for directed verdict except as to an illegal foreclosure.

3. The substance of the charge found in defendants' request to charge, which was given by the court, that a creditor has the right and power to advertise and sell security for payment of balance due on debt upon default of the debtor commits no libel or tortious act by exercising the right granted in the contract, was erroneous inasmuch as there was no power of sale to advertise and sell the security here. The charge as given was a correct statement of law as taken from *Rome Bank &c. Co. v. Kerce,* 140 Ga. App. 596, 600 (231 SE2d 464). However, it was inapt under the circumstances of this case.

4. During examination of the plaintiff he testified as to how foreclosure would affect people in their business in an effort to establish the harm to him by reason of a needless foreclosure. On cross examination he was then required to answer, over objection, a question as to whether or not he had ever had a land foreclosure. Since the plaintiff had offered testimony as to the effects of a foreclosure we do not think that the question and answer in regard to whether or not he had ever had a land foreclosure, in which he answered "One needless one," was simply to improperly get before the jury the fact that the plaintiff had a previous foreclosure. We find no harmful error here.

5. Plaintiff was asked on direct examination as to whether third parties had asked him about the foreclosure advertisements. Thereafter, when he was

asked, "What did they tell you?" objection was made that all of his conversations with other people are not admissible. Plaintiff's counsel argued that even though it is hearsay, it is an exception to the rule. However, the trial court refused to allow it as an exception to the rule. The trial court correctly allowed the witness to testify only as to what he knew and not "what anybody else says."

The courts of this state recognize in libel and slander actions that inasmuch as the slander or libel and damage consist in the apprehension of the hearers, witnesses are allowed to give their understanding of the word published and spoken. But this does not amount to an exception to the hearsay rule. See *Proctor v. Pointer,* 127 Ga. 134 (1), 135 (56 SE 111). In such cases witnesses are allowed to give their understanding of what is meant by the words spoken, when the words themselves are ambiguous or do not clearly indicate what the person using them meant by the words. This was not the case here where the witness was not allowed to repeat hearsay. The trial court did not err in refusing to allow the witness to repeat what people had told him with reference to the foreclosure.

*Judgment reversed. Banke and Sognier, JJ., concur.*

ARGUED JANUARY 16, 1980 — DECIDED MARCH 10, 1980.

*Truett Smith, L. Eddie Benton, Jr., Thomas L. Hodges, III,* for appellant.

*Andrew J. Hill, Jr., James Horace Wood,* for appellees.