## 66799. FOSHEE et al. v. HARRIS et al.

DEEN, Presiding Judge.

On November 12, 1981, appellee John Hill Harris (Harris), president and sole stockholder of appellee Harris Gin Co., Inc. (Harris Gin), entered into a contract captioned "Exclusive Right to Sell Agreement" with appellant Foshee, a real estate broker. The agreement authorized Foshee to sell certain properties owned by Harris Gin at a minimum net figure of $600,000, with a 10% commission payable upon consummation of such a sale. Foshee enlisted the aid of appellant Helton, also a licensed broker, in attempting to locate prospective purchasers.

Three special conditions were inserted in the printed form contract: a "limited to present prospect" clause was handwritten above the caption; a typewritten clause granting appellees the right to sell without commission, during the term of the contract, to two named firms was placed at the end of a printed section captioned "Terms and Conditions"; and a typewritten clause reading "10% of sales price (OWNER TO NET NO LESS THAN $600,000)" was inserted in the printed paragraph dealing with the broker's commission. The printed paragraph next following this "net to seller" clause reads in pertinent

part as follows: "Should I [Harris] contract to sell, exchange, or lease with option to purchase the above described property within three months after the above expiration date [December 1, 1981] or any extension thereof, to a purchaser to whom the above described property was offered during the continuance of this agency by you [appellant], by me, or anyone else, I agree to pay you at the same rate of commission. In this regard, within one (1) day after this agreement terminates, you shall furnish me with a complete list of the names of all persons to whom the property was offered by you, and such list shall be conclusive as to any commission rights due for any offering made by you or persons authorized by you."

During the term of this contract appellants presented to appellees two offers from Alimenta Processing Corp. (Alimenta), one for $450,000 and another for $475,000. Appellees refused to consider an offer at either figure, and the contract expired according to its terms on December 1, 1981. Appellants provided no list of prospective purchasers either at that time or at any time thereafter prior to the occurrence of the events that precipitated the action below.

In January of 1982 Harris began direct negotiations with Alimenta. On February 11, 1982, the property was sold to Alimenta for $480,000, of which $120,000 represented consideration for an agreement not to compete. Appellants informed appellees that since Alimenta was the "present prospect" referred to in the handwritten insertion, a commission of 10% of the sales price was due. Appellees refused to pay the commission, and in July 1982 appellants filed a complaint in the Crisp County Superior Court against Harris and Harris Gin, seeking $48,000 and costs. Appellees moved for summary judgment and appellants for partial summary judgment, and the court denied appellants' motion and granted that of appellees. On appeal Foshee assigns as error the award of summary judgment to appellees. Appellants do not appeal the denial of their own motion for partial summary judgment. *Held*:

The construction of a contract is a matter of law for the court. OCGA § 13-2-1; *Nodvin v. Krabe*, 160 Ga. App. 310 (287 SE2d 236) (1981). Only when the terms of a contract are ambiguous does the interpretation become a question for the jury, *Smiths' Properties v. RTM Enterprises*, 160 Ga. App. 102 (286 SE2d 334) (1981); *Salvatori Corp. v. Rubin*, 159 Ga. App. 369 (283 SE2d 326) (1981); and the existence or non-existence of ambiguity in a contract is a question of law for the court. *Id.* Hence the construction and interpretation of a written contract, of which the terms are unambiguous, is peculiarly well suited for adjudication by summary judgment. *Parramore Farms, Inc. v. John Deere Co.*, 159 Ga. App. 774 (285 SE2d 233) (1981); *Troutt v. Nash AMC/Jeep*, 157 Ga. App. 399 (278 SE2d 54) (1981). The cardinal rule of construction is to ascertain the parties' intent. *McVay v.*

*Anderson,* 221 Ga. 381 (144 SE2d 741) (1965); *Crawford v. Crawford,* 158 Ga. App. 187 (279 SE2d 486) (1981). In the construction of a contract "[w]ords generally bear their usual and common signification . . ." OCGA § 13-2-2 (2); and when a contract is partly printed and partly written, the written portion will prevail when the two portions appear to be in conflict. OCGA § 13-2-2 (7); *Batson-Cook Co. v. Poteat,* 147 Ga. App. 506 (249 SE2d 319) (1978). See also *Atlanta Baggage &c. Co. v. Loftin,* 88 Ga. App. 98 (76 SE2d 92) (1953); *Hodsdon v. Whitworth,* 153 Ga. App. 783 (266 SE2d 561) (1980); *Aetna Life &c. Co. v. Charles S. Martin Distributing Co.,* 120 Ga. App. 133 (169 SE2d 695) (1969).

In the instant case the trial court applied these principles of construction and found that appellant, in accepting the terms of the contract, accepted the typewritten "net to seller clause," which this court has upheld in previous decisions. *Kuniansky v. Williams,* 101 Ga. App. 678 (115 SE2d 204) (1960). "The broker's commissions are earned when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy *on the terms stipulated by the owner.*" OCGA § 10-6-32. (Emphasis supplied.) Finding the prospect and attempting to make the sale are not sufficient, in law, to entitle an agent to a commission; to earn the commission, he must be the procuring cause of the sale. *Jordan v. Dolvin Realty Co.,* 54 Ga. App. 472 (188 SE 304) (1936). "A broker with whom property is listed for sale does not make out a case of procuring cause . . . by merely showing that he first located the ultimate purchaser, if it further appears that without interference by the owner he was unsuccessful in bringing about an offer which could be consummated and that the sale was made after he had abandoned his effort." *Tidwell & Yarbrough Realty Co. v. Foster,* 123 Ga. App. 192, 193 (180 SE2d 259) (1971); *Parrish v. Ragsdale Realty Co.,* 135 Ga. App. 491, 494 (218 SE2d 164) (1975). The court held in *Kuniansky,* supra at 679, 680, that "the rule is that where the broker has failed to procure an offer to buy upon the terms stipulated and the owner has not relinquished his right to sell the property himself . . . [,] it must appear that the owner negotiated the sale directly to the customer procured by the broker with a fraudulent intent to deprive the broker of his commission . . . The court in this case was authorized to find that there was no fraudulent intent on the [owner's] part because no offer was procured on terms stipulated by the owner . . ."

In the case at bar the evidence sustains the court's findings that appellant was not the procuring cause of the sale as consummated; that appellees were thus free to arrange a sale through their own negotiations conducted after expiration of the contract; and that under the terms of the contract (which, even if, *arguendo,* there were some ambiguity, must be construed most strongly against the draftsman,

(OCGA § 13-2-2 (5)), the appellees were not obligated to pay a commission to appellants. Summary judgment was properly granted.

*Judgment affirmed. McMurray, C. J., Quillian, P. J., Banke and Birdsong, JJ., concur. Shulman, P. J., Carley, Sognier and Pope, JJ., dissent.*

DECIDED MARCH 6, 1984 —
REHEARING DENIED MARCH 21, 1984 — 

*Thomas E. Pujadas*, for appellants.
*Lawrence W. Roberts*, for appellees.

CARLEY, Judge, dissenting.

I cannot concur in the majority's determination to affirm the trial court's grant of summary judgment. I believe that the majority unduly focuses upon the "net to owner" language in the contract. "[I]f a purchaser procured by the broker buys from the owner, even at a less price than that given the broker, the owner would be liable for the broker's commission *if the broker's effort was the procuring cause of the sale*. [Cits.]" (Emphasis supplied.) *Tidwell & Yarbrough Realty Co. v. Foster*, 123 Ga. App. 192, 193 (180 SE2d 259) (1971). Therefore, the only issue in this case is whether the plaintiffs were the procuring cause of the subsequent sale to the one prospect to whom they had shown the property and with whom they had negotiated extensively.

The majority relies extensively upon certain language of the *Tidwell* case referred to above, to-wit: "A broker with whom property is listed for sale does not make out a case of procuring cause, however, by *merely* showing that he first located the ultimate purchaser, if it further appears that without interference by the owner he was unsuccessful in bringing about an offer which could be consummated, and that the sale was made after he had abandoned his effort. [Cits.]" (Emphasis supplied.) *Tidwell & Yarbrough Realty Co. v. Foster*, supra at 193. It is true that the plaintiffs in this case were unsuccessful in bringing about a sale which could be consummated during the term of the contract because of the owner's insistence upon the "net to seller" provision. However, the record clearly shows that this is not a case where the plaintiffs are relying *merely* on their finding of the ultimate purchaser to show that they were the procuring cause of the subsequent sale. This case differs from the cases relied upon by the majority in that, here, the contract itself provides a definition of "procuring cause" by the inclusion of the provision whereby the defendants expressly agreed that the plaintiffs' commission would be earned if the defendants sold the property within three months of December 1, 1981, "to a purchaser to whom the above described property was offered during the continuance of this agency . . ." This spe-

cific and unequivocal agreement by the defendants was not conditioned upon any particular sales price. Thus, the "net to seller" clause has no bearing on the issue of procuring cause. While, as the majority emphasizes, the plaintiffs did accept the "net to seller clause," it must also be recognized that the defendants accepted the clause providing that, under certain circumstances, the plaintiff would be entitled to a commission after the expiration of the term of the contract.

Accordingly, it is my opinion that the judgment of the trial court granting summary judgment to the seller should be reversed because the trial court erroneously construed the contract only on the basis of the inapplicable "net to seller" clause to the total exclusion of the applicable "procuring cause of the sale" clause. Cf. *Benton v. Lester*, 158 Ga. App. 696 (282 SE2d 174) (1981).

It is to be noted that appellants challenge only the grant of appellees' motion for summary judgment and do not enumerate as error the denial of appellants' motion for summary judgment. However, even if the denial of appellants' motion for summary judgment were before us, we could not reverse that denial because genuine issues of material fact remain under the terms of the applicable "procuring cause of the sale" clause in that there has not yet been a determination as to whether or not the provision requiring appellants to supply a list of prospects was a condition precedent to recovery under the terms of the contract. *Roush v. Dan Vaden Chevrolet, Inc.*, 155 Ga. App. 372 (2) (270 SE2d 902) (1980). "[S]ince issues of fact remain for decision, the trial court erred in granting summary judgment [to appellees] on [appellants'] contract claim." *Edwards v. McTyre*, 246 Ga. 302, 303 (271 SE2d 205) (1980).

I am authorized to state that Presiding Judge Shulman, Judge Sognier and Judge Pope join in this dissent.