59612. GIBBS et al. v. NIXON et al.

McMURRAY, Presiding Judge.

This case involves an action seeking to recover a real estate sales commission and damages.

On or about July 1, 1974, Stan Gibbs and/or Gibbs Properties, Inc., as brokers, obtained an open real estate listing with reference to the sale of approximately 1,820 acres of property in Gwinnett County, Georgia, otherwise known as the Bona Allen property. The prospective sellers were trustees of the property under three trust deeds. This listing entitled Gibbs to a 10% commission upon the sale of the property. A formal exclusive listing agreement was entered by and between the parties on June 28, 1976, also providing a 10% commission and a sale price of $4,500 per acre for a period of 90 days with a clause therein that if it were sold within 60 days after expiration of the agreement to anyone to whom the property was submitted by the broker during the terms of the agreement and "whose name or identity was disclosed to Owner by Agent in writing during the term of this Agreement," the commission was earned, but if the identity of any such individual had not been disclosed to the owner within the terms of the agreement then the owner "shall be free to deal with same without any obligation, liability, or responsibility whatsoever to . . ." the broker. An extension

agreement was then entered on September 3, 1976, extending the time of the agreement until December 31, 1976, all other terms of the listing remaining in full effect. When the exclusive agreement expired Gibbs was again permitted to show the property on a non-exclusive basis. This non-exclusive brokerage agreement was clarified in a letter by and between Landauer Associates, Inc., as agent of the "John Q. Allen Trusts," that is, as agent of the trustees of the so-called Bona Allen property. The letter was dated October 28, 1977, and accepted and agreed to by Gibbs on October 31, 1977. This letter set forth only a 6% commission payable by the seller to the broker conditioned upon the closing of the transaction "pursuant to a sale brought about by you to a customer of yours who shall have represented in writing that you are the sole broker in the transaction." This last brokerage agreement contained no limitation as to time and was never subsequently superseded.

During the period from 1974 through 1977, Gibbs had initiated contacts with prospective purchasers, including Mobil Oil Corporation and its subsidiary (Mobil Land Development Corp.) in an effort to sell all or a portion of the Bona Allen property to Mobil. In April, 1977, Landauer was employed by the trustees in the capacity of real estate consultants although a part of Landauer's remuneration involved the sale of each parcel of land with an additional incentive fee in the event a parcel was sold without the services of a broker. Landauer was aware in 1977 that Gibbs had been attempting to sell the Bona Allen property to Mobil although Mobil had not in anywise shown interest in buying any part of the property. The non-exclusive listing dated October 28, 1977 (by letter), was in force and effect when a Mobil subsidiary bought an option to purchase the Bona Allen property on April 14, 1978. Mobil's subsidiary then exercised the option and purchased the Bona Allen property in June, 1978. No commission was paid to Gibbs.

Stan Gibbs, as a licensed real estate broker and also as Gibbs Properties, Inc., also a Georgia real estate brokerage corporation, alleging the above undisputed facts, brought an action against the trustees individually and also as trustees of the trust deeds created by John Q. Allen, as well as Landauer Associates, Inc., the trustees' agent, in four counts, alleging damages in depriving the plaintiffs of their real estate commission, contending plaintiffs were the procuring cause or efficient cause "of the sale to Mobil Oil Corporation, through its subsidiary Suwanee Creek Land Development Corporation."

Count 1 sought judgment jointly and severally against the defendants in the sum of $187,200 in real estate commissions plus

'$500,000 in punitive damages and attorney fees plus costs. Count 2 sought the same amount resulting from a conspiracy by and between the defendants and Mobil Oil Corporation or its wholly owned subsidiary in seeking to deprive plaintiffs of their duly earned real estate commission. Count 3 alleged that the conduct of the defendants intentionally interfered with the plaintiffs' commission contracts, thereby depriving them of their duly earned brokerage fee, seeking the same amounts. Count 4 sought a reasonable fee for their services based upon quantum meruit arising out of their services, having a reasonable value in excess of $312,000, contending that they were entitled to judgment in this amount.

Except for certain admitted facts with reference to the transaction the defendants denied each and every claim of the plaintiffs and denied that the plaintiffs procured Mobil Oil Corporation, Suwanee Creek Land Development Corporation, or any related corporation, as purchaser of the property, admitting, however, that the plaintiff Stan Gibbs had made a demand for commissions by letter dated June 5, 1978. They also added other defenses such as failure to state a claim, estoppel, waiver, lack of jurisdiction over the person and improper venue and certain other defenses, including the failure of the plaintiffs to meet the requirements of the agreement as to a condition precedent to the payment of commission that is, that the sale be brought about by the broker to a customer who shall have represented in writing that the broker is the sole broker in the transaction.

Plaintiffs then amended, seeking to add Mobil Oil Estates (North Fulton) Limited, Mobil Land Development (Georgia) Corp. and its wholly owned subsidiary Suwanee Creek Land Development Corporation as additional parties defendant as joint tortfeasors, alleging that Suwanee Creek Land Development Corporation executed the option agreement and purchased the Bona Allen property with actual knowledge that its representation that it had dealt with no broker in this transaction other than Landauer was false and financially damaging to the plaintiffs; that all these defendants knew or should have known of the contractual relationship between plaintiffs and the defendant trustees and their agent defendant Landauer and their conduct and false representation was an intentional interference with plaintiffs' contractual relationship, all of said conspiratorial acts of the defendants being intentional and maliciously made to deprive plaintiffs of their duly earned real estate commission. These parties were ordered and decreed by the trial court to be made parties and to be served with the complaint and all amendments thereto.

After extensive discovery all of the defendants moved

separately for summary judgment. In three separate orders dated November 14, 1979, the trial court granted summary judgment to Landauer Associates, Inc., the trustees individually and as trustees of the Bona Allen property involved and to the additional defendants, Suwanee Creek Land Development Corporation, Mobil Land Development (Georgia) Corp., and Little Creek Corporation (formerly Mobil Oil Estates (North Fulton) Limited). The plaintiffs appeal. *Held:*

In determining whether or not a real estate broker is the procuring cause of a sale where there is no exclusive contract to sell, the broker must show and prove that there were negotiations still pending between the broker and the prospective purchaser and that the owner was aware that negotiations were still pending at the time he consummated the sale. *Doonan v. Ives & Krouse,* 73 Ga. 295; *Kuniansky v. Williams,* 101 Ga. App. 678 (115 SE2d 204); *Ideal Realty Co. v. Storch,* 124 Ga. App. 271, 272 (2) (183 SE2d 520); *Fields Realty & Ins. Co. v. Smith,* 123 Ga. App. 342 (180 SE2d 909); *Tidwell & Yarbrough Realty Co. v. Foster,* 123 Ga. App. 192, 193 (2), 194 (6) (180 SE2d 259).

In the instant case the broker had worked diligently for a number of years (July, 1974, through July, 1977) in an effort to sell the property. It is true that during some of this time he had an exclusive contract and at other times he had an open non-exclusive listing. The broker was never told to cease efforts to consummate the sale. However, mere knowledge by the prospective purchaser of the proposed sale as received by it from the broker is totally insufficient to establish negotiations in the purchase of the property. During this period the purchaser corporation had not been created. Here in four different instances, all involving mere correspondence by mail, the purchaser's alter ego was made aware that the broker in the case sub judice was attempting to sell the property. In August, 1974, Mobil Oil Corporation's agent in the purchase of service station sites mailed a copy of a brochure furnished by Gibbs to Mobil Oil Estates Limited, located in Canada; in August, 1976, two years later, another copy of a brochure prepared by Gibbs was received in Canada by Mobil Oil Estates Limited, and in September, 1976, a co-broker forwarded a third brochure with reference to the sale. In July, 1977, the broker again wrote to Mobil Oil Estates Limited in Canada, with a brochure attached. In all four instances Mobil replied that it had no interest in the property at that time. The evidence before us shows clearly that the many contacts that the broker had with the local representation in the purchase of Mobil Oil Corporation's service station activities were in nowise negotiations toward the purchase

and sale of this property since this agent was only involved in locating prospective service station sites for Mobil Oil Corporation. Consequently, the evidence before the trial court on the motion for summary judgment fails to show testimony that any negotiations were pending between the broker and the prospective purchaser so as to amount to a procuring cause of the sale by the broker, particularly where, as here, there was no exclusive contract to sell. Absent any pending negotiations by and between the broker and the ultimate purchaser, after Mobil had elected to enter the real estate field in the Atlanta area in 1977, there was no showing of liability of the owners for a real estate commission either based on contract or quantum meruit. The evidence is also insufficient to show a conspiracy by and between the purchaser, seller and its corporate agent to close the transaction without payment of any real estate commission earned by the broker. See *Parrish v. Ragsdale Realty Co.*, 135 Ga. App. 491, 494-495 (218 SE2d 164); *Tidwell & Yarbrough Realty Co. v. Foster*, 123 Ga. App. 192, 193, supra; *Ranck & Keefe, Inc. v. First Richmond Corp.*, 138 Ga. App. 542, 543 (226 SE2d 795).

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED MARCH 12, 1980 — DECIDED APRIL 10, 1980 — REHEARING DENIED APRIL 29, 1980 —

*Joseph Szczecko*, for appellants.

*James Rawls, Frank Love, A. Felton Jenkins, Ralph B. Levy, Alfred G. Adams, Jr., Alfred A. Lindseth*, for appellees.