69036. HENDRIX v. FIRST NATIONAL BANK OF COLUMBUS et al.
(326 SE2d 489)

BIRDSONG, Presiding Judge.

This is a real estate commission case in which the trial court granted summary judgments against the appellant broker, Hendrix, and in favor of the seller First National Bank, in favor of the purchaser Capps, and in favor of Dudley who the broker claimed was the real and ultimate purchaser. The broker sued for, inter alia, breach of contract, wrongful interference with contract, conversion, and fraud of the defendants in colluding to deprive him of his commission. *Held*:

On motion for summary judgment, the movant bears the burden of establishing the non-existence of a genuine issue of material fact, and the benefit of all doubt is awarded to the respondent; all evidence is viewed in a light most favorable to the respondent and his evidence is treated with indulgence. *Gilbert v. Decker*, 165 Ga. App. 11 (299 SE2d 65). Under those rules of law, the evidence in this case creates no issues of material fact as to whether the broker Hendrix was the procuring cause of the sale of land to Capps nor, consequently, whether the defendants acted in fraud or breach of contract or wrongful interference to deprive him of his commission.

The evidence shows that the subject property of 775 acres was part of a Georgia estate which the bank, as executor, proposed to sell.

The owner had died January 6, 1981, and on February 25, 1981, the bank vice-president told the broker (Hendrix) he could offer the land for sale; he gave the broker a plat and discussed a sale price of $400 per acre and a ten percent broker's commission. Up to this time, seven weeks after the owner's death, no one had offered to buy the property. After talking to the bank's officer, the broker immediately offered the land to Georgia Kraft Company. The next day, February 26, defendant Dudley (an Alabama resident) called the broker on another matter, and the broker offered the land to him. Dudley and the broker had a fairly extended conversation, during which Dudley said the $400 per acre price was too high and he as a speculator was not interested, but Dudley suggested a deal by which he and the broker might arrange to buy the land by having another person submit a lower bid, and then sell it. The broker told Dudley he had already offered the land to Georgia Kraft at $400 per acre.

Dudley was familiar with the subject property because several years earlier the broker had shown the property to Dudley; also Dudley owned some contiguous property. After this conversation, the broker never talked with Dudley again, although he several times unsuccessfully phoned Dudley at his office. The broker told the bank's officer that he had offered the property to Georgia Kraft and to Dudley. On March 19, 1981, Georgia Kraft submitted a "bid." On March 23 and 24, defendant Capps bid $10 more per acre than Georgia Kraft, and another person bid $1 more than Georgia Kraft. On March 24, the bank's trust committee met and decided to reject all three bids and to require a sale price of $450 per acre, net. The broker found out from Georgia Kraft on March 25, after the first bids were received, that Capps was bidding on the property and at that time told the bank officer that he believed Capps and Dudley were working together on this deal or that Capps was really "fronting" for Dudley, and therefore if the land was sold to Capps, he expected to be paid a commission. Capps was the brother-in-law of Dudley, both men having married sisters. Dudley and Capps were two of the biggest individual landowners and land speculators in the area; both are residents of Alabama. Dudley and Capps owned some land together; they were also close friends and frequently worked together.

On the second go-round in April, Georgia Kraft bid $505 per acre, or $455 net after the broker's commission. Then Capps bid $465, which was $10 more per acre than Georgia Kraft's net bid. The bank's officer in deposition testified that all the bids were of course secret, but after this sequence of events, Georgia Kraft "angrily" withdrew from the bidding.

On May 27, Capps bid $510 per acre, and the bid was accepted. The sales price was $395,000, and Capps was asked to indemnify the bank against any commission claim by the broker and to formally

submit to Georgia jurisdiction in any claim. Capps was unknown to anyone at the bank and unheard of by anyone at the bank until he had walked in the bank in March and offered to buy the property. In order to pay for the property, he borrowed $400,000 from the Phenix-Girard Bank in Alabama, of which Dudley owned controlling stock interest. The sale was consummated August 19, 1981.

As it happened, slightly more than a month later, Capps swapped the subject property to Dudley with some other property, a total of 4,100 acres, and received in return 1,600 acres from Dudley. That same day, September 24, 1981, Capps sold the 1,600 acres to Evergreen Timberlands Co. for $915,000.

Capps deposed that he had planned to sell the subject property to Evergreen and never intended to swap the property to Dudley and never even discussed the subject property with Dudley until after he found out Evergreen was not interested in buying it. Capps swore by affidavit that he had communicated by telephone with Larry Hood and a Mr. Milliken, Evergreen's representatives, about Evergreen's hoped-for purchase of the subject property. However, telephone records tend to show that Capps did not call Hood or Milliken but that Dudley called Evergreen on March 19, 1981, three days before Capps' first bid on the subject property. Dudley called Milliken on May 18, 1981, two days before Capps made his final accepted bid on the subject property; Dudley again called Hood of Evergreen on June 16, 1981. Dudley called Hood on August 19, 1981, which was the day of the sale of the subject property by the bank to Capps was closed. Larry Hood of Evergreen swore by affidavit that on May 22, 1981 (the day after Capps made his third successful bid on the subject property), he and Mr. Milliken went to Capps' store to meet about looking at some tracts of land, and that Dudley came to the store and Dudley, not Capps, showed Hood and Milliken several tracts of land, including the subject property, which Dudley said "they, meaning himself and Mr. Capps" were interested in selling.

Unless Hendrix was the procuring cause, there is no issue of any conspiracy to defraud him of his earned commission. *Hodges-Ward Assoc. v. Ecclestone*, 156 Ga. App. 59, 61 (1) (273 SE2d 872). We think clearly Hendrix was not the procuring cause of this sale. In determining whether a broker was the procuring cause of the sale where there is no exclusive contract to sell, it must be established that (i) the negotiations were still pending between the broker and the prospective purchaser; and (ii) the owner was aware that the negotiations were still pending at the time he consummated the sale. *Hodges-Ward Assoc.*, supra, p. 61; *Charles A. Mueller Realty Co. v. Tucker Real Estate Co.*, 131 Ga. App. 54, 56 (205 SE2d 61).

At best, assuming to be true the allegations of Dudley being the real purchaser, "mere knowledge by the prospective purchaser of the

proposed sale as received by it from the broker is totally insufficient to establish negotiations in the purchase of the property." *Gibbs v. Nixon*, 154 Ga. App. 463, 466 (268 SE2d 670). There is no evidence in this record that Hendrix ever discussed terms or negotiated terms with Dudley or Capps after the initial call wherein the broker mentioned the property to Dudley, and no evidence that Hendrix ever conveyed an offer on Dudley's or Capps' behalf. In *Kraft Land Services v. Hart Co.*, 165 Ga. App. 358 (300 SE2d 186), a parallel but stronger case where it was undisputed that the broker had introduced the buyer to the land, gave him information about it and even repeatedly sought to interest him in purchasing it, the evidence was held insufficient to support a finding that the broker was the procuring cause of the sale. See also *Gibbs*, supra; and see *Jordan v. Dolvin Realty Co.*, 54 Ga. App. 472, 477 (188 SE 304) where it was held: "If such evidence makes out a case of procuring cause, it would never be safe for an owner of property to sell through any agent, except the first one who directed the prospective purchaser to the premises; and in the event the purchaser does not wish to deal with the first agent, the owner must lose his sale, or be subjected to the payment of a dual commission. If such evidence makes a case of procuring cause, all that an agent would have to do would be to direct a prospective purchaser to the property, quote him the price stipulated by the owner, notify the owner, and then sit back and wait for some one else to make the sale, feeling secure in the knowledge that his commissions are earned, regardless of who might consummate the sale." We must conclude that there were no negotiations pending so as to authorize a finding of procuring cause under the rule set forth in *Hodges*, supra, and *Charles A. Mueller Realty*, supra; and consequently there is no cause of action for breach of contract, wrongful interference, conversion, fraud, and no issue of conspiracy to deprive appellant of a commission he did not earn.

*Judgment affirmed. Carley and Beasley, JJ., concur.*

DECIDED JANUARY 8, 1985 —
REHEARING DENIED FEBRUARY 25, 1985 —

*James E. Butler, Jr.*, for appellant.
*John W. Denney, Kathelen M. Van Blarcum, Pelham Ferrell, J. Madden Hatcher, Jr.*, for appellees.