### A00A0212. NATIONAL BUSINESS ACQUISITIONS, INC. v. MANDULA.
#### (537 SE2d 162)

MILLER, Judge.

This case concerns a contract between a business broker and a potential business purchaser containing a provision that the purchaser may be liable if he interferes with the broker's right to a commission from the seller of a certain business. The question on appeal is whether this contract provision renders that purchaser liable if he contacts the seller and buys the business long after the purchaser has had any contact with the broker. Since the broker was not entitled to a commission from the seller, we hold that the contract does not impose any liability and therefore affirm summary judgment in the purchaser's favor.

Construed in favor of the plaintiff/broker, the evidence shows that the owner of Transmission Air Conditioning Parts Specialists, Inc. (TAPS) offered his business for sale under an "open listing," which meant that any broker could sell the property and earn a commission. In August 1995, National Business Acquisitions (NBA), a business broker, approached John Mandula about buying TAPS. NBA had Mandula sign an "Acknowledgment and Confidentiality Agreement," drafted by NBA, which included the following provision:

> In consideration of information furnished and presented to me of the places of business listed above [including TAPS], I agree that should I buy . . . any of them within three (3) years from date hereof, that I will protect [NBA's] right to commission. I understand that [NBA] has a listing agree-

---

[5] Cf. *Smith v. State*, 248 Ga. 828, 830 (3) (286 SE2d 709) (1982).

ment or contract with owner or their authorized agent, of the places listed [above] which provides for a commission payment. *I understand that if I interfere in any way with the broker's contract right to a commission from seller, I may be personally liable for the payment of that commission.*[1]

Shortly following NBA's presentation regarding TAPS, Mandula announced that he was not interested in buying the business, and no offer was made.

Over a year later, an employee in Mandula's business (which did business with TAPS) informed Mandula that TAPS was for sale. Mandula did nothing. In early 1997, the employee once again brought the matter to Mandula's attention, who then contacted TAPS and without the involvement of NBA negotiated a purchase of TAPS's assets that closed in May 1997.

NBA sued Mandula for breach of contract, claiming that the "Acknowledgment and Confidentiality Agreement" obligated Mandula to pay NBA a commission on the business sale if he interfered with NBA obtaining a commission from the seller. The trial court granted Mandula's motion for summary judgment, holding that because NBA had no right to a commission from the seller, Mandula could not have interfered with that right. NBA appeals the summary judgment order.

1. NBA's sole argument on appeal is that because there is a factual dispute whether in 1996 and 1997 Mandula remembered that NBA had first brought TAPS to his attention, summary judgment was inappropriate. This fact is immaterial to determining whether Mandula breached his agreement with NBA or whether NBA was the procuring cause. "[S]ummary judgment is not inappropriate where contradictory statements are made with regard to wholly immaterial matter."[2]

Nevertheless, we will review the merits of the trial court's order on summary judgment. On review of a grant of summary judgment, we apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant.[3] If there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, summary judgment is proper.[4]

2. The "Acknowledgment and Confidentiality Agreement" did not obligate Mandula to pay NBA a commission if he interfered with

---

[1] (Emphasis supplied.)

[2] (Citation omitted.) *Wallace v. ARA Svcs.*, 185 Ga. App. 639, 642 (3) (365 SE2d 461) (1988).

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[4] Id.; see OCGA § 9-11-56 (c).

NBA's right to a commission from the seller of TAPS. The agreement provided only that if he interfered with NBA's right to a commission from the seller, he "may" be liable for payment of that commission. It did not specify the conditions under which he would be liable. Even if this provision were ambiguous, it would be construed against NBA as its drafter.[5] Thus, NBA's only alleged cause of action — that Mandula breached his contractual obligation to pay the commission — must fail.

Moreover, even if the provision mandated that Mandula would be liable if he interfered with NBA's contract right to a commission from the seller, that provision would be triggered only if NBA had such a contract right. Though the agreement claimed that NBA had a listing agreement or contract with the seller providing for a commission payment, NBA's president and owner readily admitted that TAPS's seller had no listing agreement with NBA and did not owe NBA a commission on the sale to Mandula. As conceded in NBA's appellate brief, "Appellant did not, and does not contend, that the previous owner of TAPS was liable for a commission since there was an 'open listing' on the business." Thus, even if the terms of the contract were not merely precatory, those terms would not purport to make Mandula liable for interfering with a commission due from the seller where it is conceded that no commission was due.

3. Nor does the evidence allow NBA to pursue a tort action for tortiously interfering with NBA's right to a commission from the seller. First, NBA admits that the seller owed no commission. Second, where the business is being sold under an "open listing," a broker is not entitled to a commission unless the broker was the procuring cause of the sale.[6] On appeal NBA does not directly contest the trial court's ruling that under the undisputed facts NBA was not the procuring cause of the sale.

Moreover, the trial court's conclusion was correct. To be the procuring cause the broker must show "that there were negotiations still pending between the broker and the prospective purchaser and that the owner was aware that negotiations were still pending at the time he consummated the sale."[7] Here, despite NBA's entreaties in 1995, Mandula did not begin negotiations nor make any offer on the property; rather, Mandula clearly informed NBA that he was not interested. Not until 1997 did Mandula, at the behest of his own employee, contact TAPS's owner about purchasing the business, which resulted in the sale at issue.

---

[5] *Alexander v. Steining*, 197 Ga. App. 328, 330 (2) (398 SE2d 390) (1990).

[6] *Cartel Realty v. Southern Bearings &c. Co.*, 243 Ga. App. 653, 654 (2) (534 SE2d 119) (2000).

[7] (Punctuation and footnote omitted.) Id.

These facts parallel those of *Income Properties v. Glass*,[8] in which the court explained that as a matter of law the plaintiff/brokers were not the procuring cause of the sale under such circumstances:

> Inasmuch as appellants have failed to show that either of them received an exclusive listing; that any offer was made to the seller through [them]; or that any negotiations ever took place between them and the purchaser, we find no evidence that appellants were the procuring cause of the sale.[9]

If the broker is not the procuring cause, the broker is not entitled to a commission, and therefore there can be no tort for interfering with that broker's right to a commission.[10]

4. We deny Mandula's motion to impose a frivolous appeal penalty under Court of Appeals Rule 15 (b).

*Judgment affirmed. Motion for damages for frivolous appeal denied. Pope, P. J., and Smith, P. J., concur.*

DECIDED JULY 11, 2000.

*John J. Capo*, for appellant.

*Troutman Sanders, Mark S. VanderBroek, Lisa M. Arent*, for appellee.

---

[8] 195 Ga. App. 127 (392 SE2d 728) (1990).

[9] Id. at 129 (1); accord *Hendrix v. First Nat. Bank of Columbus*, 173 Ga. App. 513, 516 (326 SE2d 489) (1985) (broker was not procuring cause because there was no evidence that broker ever discussed or negotiated terms with the buyer or that the broker ever conveyed an offer to the seller on the buyer's behalf); *Kraft Land Svcs. v. Hart Co.*, 165 Ga. App. 358, 363 (1) (300 SE2d 186) (1983).

[10] *Hendrix*, supra, 173 Ga. App. at 516; see *Kinard Realty v. Evans*, 152 Ga. App. 813, 814 (1) (264 SE2d 282) (1979).