A04A0817. INSIGNIA/ESG, INC. v. REPRODUCTIVE BIOLOGY ASSOCIATES, INC. et al.

(603 SE2d 434)

ANDREWS, Presiding Judge.

Insignia/ESG, Inc., a provider of real estate brokerage services, brought suit to collect a commission it allegedly earned as a broker representing the Southeastern Fertility Institute (SFI) on a commercial lease of space by SFI for relocation of its business. In addition to naming as defendants SFI and its related business entities,[1] the suit also named as individual defendants Hilton I. Kort, M.D. (a principal owner of SFI), H. Ron Davidson III (an SFI employee), and Lawrence

---

[1] SFI is a medical practice comprised of various entities specializing in the treatment of infertility. Insignia's suit included claims against the following entities comprising SFI's practice, all of which are referred to jointly in this opinion as SFI: Reproductive Biology Associates, Inc. d/b/a Southeastern Fertility Institute; Southeastern Fertility Institute, a Georgia Partnership; Southeastern Fertility Institute Surgical Associates, P.C.; and Southeastern Endocrine Labs, Inc.

E. Cooper (a principal owner of Pavilion Partners, L.P., the landlord on the lease). Insignia alleged under various theories that there was a breach of contract between it and SFI; that it was the procuring cause of the lease; that it was entitled to compensation from SFI on the basis of quantum meruit; that SFI, Kort and Davidson conspired with Cooper to deprive it of a commission; and that Cooper tortiously interfered with its business relations. Insignia appeals from the trial court's grant of summary judgment in favor of all the defendants on all the claims. For the following reasons, we affirm.

On February 21, 2001, SFI executed a lease with Pavilion Partners to relocate SFI's business to space in a building located at 1150 Lake Hearn Drive. Although Insignia claims it is entitled to a commission as a result of this lease, it is undisputed that Insignia had no written commission agreement with SFI. Nor does Insignia claim that it had an agreement, written or oral, to exclusively represent SFI for relocation of its business. Accordingly, Insignia's claims are based in part on a contention that it had a nonexclusive oral agreement to represent SFI on its relocation lease.

Evidence showed that beginning in May 1999, pursuant to oral contacts with SFI, Insignia made attempts to renegotiate the lease for space then occupied by SFI which expired at the end of 2000, and made other attempts to find suitable space for SFI to relocate. However, Insignia's relocation efforts were not successful, and by September 2000 Insignia had ceased looking for relocation space and was focused on efforts to renew the existing lease. In December 2000, Cooper, who had known Kort professionally and socially since the 1980s and had previous conversations with Kort about relocation space at the Lake Hearn building, contacted Kort and told him that Equifax, the tenant occupying the fourth floor space in his 1150 Lake Hearn building, was interested in vacating, and asked Kort if SFI was interested in relocating to that space. Thereafter, Cooper took an SFI representative on a tour of the space, and Cooper and SFI negotiated an agreement for SFI to relocate to the space. There is no evidence that Insignia initiated the contact between Cooper and Kort or that Insignia participated in the negotiations which ultimately led to the lease agreement for the 1150 Lake Hearn space executed on February 21, 2001.

Two Insignia agents, John Shlesinger and Steven Barton, gave testimony showing that Insignia had no knowledge of the contact or lease negotiations between Cooper and SFI until Kort informed them that SFI intended to relocate to the 1150 Lake Hearn space. Consistent with these facts, Shlesinger and Barton gave additional testimony showing that, despite efforts by Insignia to find relocation space for SFI, there was no agreement between Insignia and SFI on the essential terms of an oral contract for a brokerage commission

with respect to the relocation lease. *White & Assoc. v. Decker & Hallman, P.C.*, 203 Ga. App. 14-15 (416 SE2d 352) (1992). Shlesinger testified by deposition that "we agreed that if [SFI] did relocate then [Insignia's commission] would get paid by the landlord of the relocating building." According to Shlesinger, Insignia informed SFI that it was customary for the landlord to pay the relocation commission, and he could not recall any occasion where SFI and Insignia agreed that SFI would pay the relocation commission if the landlord refused to pay the commission. After Shlesinger learned of the contact between SFI and Cooper with respect to the 1150 Lake Hearn space, he wrote a letter to SFI on behalf of Insignia on January 26, 2001, in which he stated that, although the usual practice was for the landlord to pay the commission on a relocation lease, the landlord at the Lake Hearn building "did not believe he should pay a commission" and that Insignia was "surprised at his position." The letter concluded in light of these statements that Insignia would like to meet with SFI "to finalize a fee arrangement." Finally, Shlesinger admitted in his deposition testimony that Insignia did not have a specific agreement for SFI to pay a relocation commission.

Similarly, Barton testified by deposition that, where the landlord refused to pay the commission, "we had conversations with SFI regarding who was to pay such." Barton testified that he twice met with an SFI representative sometime in 1999 and informed the representative of the amount of Insignia's relocation commission and told him that "landlords typically pay the tenant's broker commission." Barton initially testified that an SFI representative agreed at one of those meetings to pay Insignia's commission for a relocation lease, but he later revised that testimony and stated that he could not recall an agreement. Barton said the SFI representative at the meetings gave an affirmative response to his statements, but he could not recall reaching an agreement on SFI's payment of a relocation commission if the landlord refused to pay. When asked if they discussed what would happen if a landlord refused to pay the commission, Barton responded that he intended to let SFI know if that happened and "cross that bridge when we come to it." Barton admitted that no agreement was reached in the 1999 meetings that SFI would pay a relocation commission at the Lake Hearn space if the landlord refused to pay. Although Barton testified that an SFI representative subsequently agreed to pay Insignia's commission on a relocation lease for space in the Interchange building (another space under consideration) if the landlord refused to pay, he could not recall that SFI ever agreed in general to pay Insignia's commission on any other space on which a landlord refused to pay the commission.

Barton further testified that, after he learned in late December 2000 that SFI had negotiated an agreement with Cooper to relocate

to the 1150 Lake Hearn space, he spoke briefly to an SFI representative in the first week of January 2001 who told him, "Don't worry, we'll pay your fee." Barton testified that there was no discussion about the statement and he did not know whether this meant a relocation fee, but that was his impression. In any event, Insignia conceded in its responsive brief to SFI's motion for summary judgment that any statement that SFI would pay a fee at that point was not offered as evidence establishing an agreement by SFI to pay the relocation commission, but was offered to "confirm [SFI's] prior commitment to pay the commission." Furthermore, Barton admitted that, after he learned of the tentative lease agreement between SFI and Cooper, he reviewed Shlesinger's January 26 letter (before it was sent) in which Shlesinger asked Insignia for a meeting "to finalize a fee arrangement." Contrary to Insignia's contention, we find no basis for concluding that the January 26, 2001 letter should have been excluded from consideration by the court as an offer of compromise. See OCGA § 24-3-37. There is nothing in the letter which can be reasonably construed as an offer to compromise a disputed claim. Moreover, although there was evidence that SFI later offered to settle Insignia's commission claim and Insignia rejected the offer, Barton testified that this occurred one to three months after his conversation with an SFI representative in the first week of January 2001.

Based on these facts, we find no error in the trial court's conclusion that Insignia had no basis to claim a contractual right to a commission. *Sharp-Boylston Co. v. Lundeen*, 145 Ga. App. 672, 673-674 (244 SE2d 622) (1978); *Lifestyle Family, L.P. v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305, 308-309 (568 SE2d 171) (2002). Not only was there a lack of evidence to show an agreement on payment of a relocation commission, the evidence shows that, despite making efforts as a nonexclusive broker to find relocation space for SFI, Insignia failed to do so and was not a party to the negotiations between SFI and the landlord which culminated in the lease.

We also find no error in the trial court's further conclusion that Insignia was not the procuring cause of the lease. Even if, as Barton claims, Insignia identified the Lake Hearn building complex to SFI as a possible relocation alternative in 1999 the evidence showed that the February 21, 2001 lease at issue was the direct result of Cooper's contact with his friend and professional acquaintance, Kort, in December 2000 during which Cooper informed Kort and SFI that the fourth floor space occupied by Equifax at the 1150 Lake Hearn building would be available. Even if, as Barton also claims, he told SFI in 2000 that space might become available somewhere in the 1150 Lake Hearn building, there was no evidence that Barton told SFI that the space occupied by Equifax would become available. In fact, Barton testified that he had no recollection of telling SFI the

Equifax space would be available, and that he first learned Equifax was moving when he heard that SFI was relocating to the space. When SFI concluded lease negotiations with Cooper and executed the lease, there was no evidence that Insignia was involved in negotiations to lease the space for SFI, nor was there evidence that Cooper or anyone else interfered to prevent Insignia from culminating lease negotiations which it had set on foot. Accordingly, we find there was a lack of evidence in the record sufficient to show that Insignia was the procuring cause of the lease. *Kraft Land Svcs. v. Hart Co.*, 165 Ga. App. 358, 363 (300 SE2d 186) (1983); *Christopher Investment Properties v. Cox*, 219 Ga. App. 440, 442-443 (465 SE2d 680) (1995).

For similar reasons, we also agree with the trial court's grant of summary judgment against Insignia on its claim based on quantum meruit. Given that the lease resulted from Cooper's direct contact and independent negotiation with SFI without participation by Insignia, we find no basis for a claim that Insignia was unjustly denied compensation for services provided and knowingly accepted by the parties with respect to the relocation lease. *Decker & Hallman*, 203 Ga. App. at 16; *Cox*, 219 Ga. App. at 444. The fact that the lease at issue contained terms similar to terms that Insignia claims it would have negotiated for SFI if it had been successful in its efforts is not sufficient to support a claim based on quantum meruit. Moreover, in addressing the above claims in light of the motion for summary judgment, we find no error in the trial court's decision pursuant to *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), to eliminate affidavit evidence presented by Insignia in response to the motion which conflicted, without adequate explanation, with the deposition testimony given by Insignia's agents.

Finally, because Insignia's commission claims based on breach of contract and procuring cause failed, we find no basis for Insignia's claim alleging a conspiracy to deny it a commission. *Cox*, 219 Ga. App. at 443; *Cartel Realty v. Southern Bearings & Parts Co.*, 243 Ga. App. 653, 656 (534 SE2d 119) (2000). Nor do we find any basis for Insignia's claim that, by contacting Kort and SFI and culminating the lease, Cooper tortiously interfered with its business relations. *Hendrix v. First Nat. Bank of Columbus*, 173 Ga. App. 513, 516 (326 SE2d 489) (1985). Even if there was evidence that Cooper did not want a broker involved in the negotiations with SFI, this was not evidence of tortious interference in the absence of any evidence that Cooper undercut negotiations set on foot by Insignia. Insignia did not have exclusive rights to represent SFI, so nothing prevented Cooper and SFI from independently negotiating the lease. *Cartel Realty*, 243 Ga. App. at 655. Accordingly, the trial court properly granted summary judgment in favor of the defendants on all the claims.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 26, 2004 —
RECONSIDERATION DENIED AUGUST 13, 2004.

Arnall, Golden & Gregory, Charles L. Gregory, Roger A. Chalmers, for appellant.

Powell, Goldstein, Frazer & Murphy, Simon H. Bloom, John W. Harbin, for appellees.