## 17095.   BARRINGTON *v.* DUNWODY.

PER CURIAM.   A majority of the court holds, upon the authority of *Garfunkel* v. *Byck*, 28 *Ga. App.* 651 (113 S. E. 95), that the court did not err in sustaining the demurrer and dismissing the plaintiff's petition. *Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur. Luke, J., dissents.*

DECIDED JUNE 16, 1926.

Action for breach of contract; from city court of Savannah—Judge Freeman.   December 12, 1925.

Application for certiorari was made to the Supreme Court.

*McLaws & McLaws, Henry Brennan,* for plaintiff.

*McIntire, Walsh & Bernstein,* for defendant.

LUKE, J., dissenting. The petition in this case was substantially as follows: (1) P. J. Dunwody is a resident of Chatham county, Georgia. (2) On the 19th day of March, 1925, petitioner entered into a written contract with the said Dunwody whereby the said Dunwody gave petitioner the exclusive selling rights to all that certain house and lot in Chatham county, Georgia, in the City of Savannah, and known upon the map in the plan of said city as 915 Maupas Avenue; a copy of said agreement being hereto attached. (3) By the terms of the said agreement neither the owner, P. J. Dunwody, nor any person acting for him, except petitioner, had the right to sell the said property, unless they accounted to petitioner for his commission, as set forth in said agreement. (4) Petitioner fully performed his part of the contract by devoting his time to finding a purchaser for said property and advertising it for sale at his own expense. (5) Petitioner shows that without his consent said P. J. Dunwody has sold the said property to M. G. Bishop at and for the sum of $5800. (6) Petitioner further shows that defendant has never given him any notice in writing of his intention to withdraw from him the exclusive selling rights of said property, as set forth and required

---

Brokers, 9 C. J. p. 522, n. 21; p. 635, n. 41,

by the said agreement. (7) Said P. J. Dunwody has failed to account to petitioner for his commission on account of said sale to said Bishop of said property. (8) Petitioner shows that the amount of commission he is entitled to by reason of said sale is $270. (9) Petitioner has made demand upon said Dunwody for the sum of $270 as the commission as aforesaid, but he failed and refuses to pay the same. Wherefore petitioner prays judgment against said P. J. Dunwody for the sum of $270.

The copy of the contract attached to the petition was as follows:

"Savannah Real Estate Board

"Listing Blank.

"To A. H. Barrington: In consideration of your efforts to sell the following property I hereby give the exclusive authority to sell the same. You are authorized to sell for the sum of $6,000.00, or any other price that may be agreed on hereafter, and I agree to pay you the regular commission adopted by the Savannah Real Estate Board as noted on the back hereof, and I hereby agree to give ninety days' notice in writing in the event of withdrawal of the property from you for sale. Advertising to be at the discretion of the broker, and all costs to be at the expense of broker unless otherwise agreed upon in writing. I have the right to enter into this contract, and a good title will be delivered. I do yes desire the property advertised. You may put a sale sign on said property. The property to be sold is described as follows: 915 Maupas Avenue, 5 rooms and bath, garage and servants' toilet. (Don't put sign on this property.) Witness my hand and seal at Savannah, Ga., this 19th of March, 1925.

"P. J. Dunwody, Owner (L. S.)

"A. H. Barrington, Broker."

Without objection, paragraph 8 of the original petition was stricken, and the following was substituted therefor: "Your petitioner further shows that the amount of damage that he has suffered by reason of defendant's breach of contract in depriving your petitioner of the exclusive selling rights to said property by selling the property himself for $5800, while the contract giving your petitioner the exclusive selling rights to said property was still in force is $270, being the amount of commission that plaintiff would have received had he been allowed to make the above-de-

scribed sale as he was entitled to make by the terms of the contract."

Defendant demurred to the petition as follows: (1) The petition fails to set forth any cause of action. (2) The petition fails to show that plaintiff made sale of said property. (3) It appears from said petition that plaintiff did not make sale of said property. (4) Said contract declared upon and annexed to the petition lacks mutuality and is unilateral, for the reason that there is nothing in said contract making it obligatory upon plaintiff to make any effort to sell the property mentioned. (5) While the contract expresses the desire of defendant that the property shall be advertised, there is no obligation upon the plaintiff to advertise it, this being entirely discretionary with plaintiff. (6) The 3d paragraph of said petition is the conclusion of the pleader, not borne out by any facts alleged or by the agreement attached to the petition. (7) The 4th paragraph fails to allege the name of the purchaser. (8) The 4th paragraph fails to allege how plaintiff advertised said property for sale. The court's judgment was as follows: "Upon consideration of the foregoing demurrer, and of the petition as amended, the said demurrer is sustained on all grounds thereof and petition dismissed."

The petition as amended was an action for damages for breach of contract. This being true, grounds 2 and 3 of the demurrer are, in my opinion, without merit.

The decision in the case of *Garfunkel* v. *Byck*, 28 *Ga. App.* 651 (113 S. E. 95), holding that a contract the same in form and substance as the one under consideration was unilateral, is binding upon this court, and impels it to hold that this contract was originally unilateral. The question then arises as to whether or not said contract became bilateral and binding upon both parties by reason of the allegation in the petition that, "according to the terms of said agreement, he (petitioner) fully performed his part of the contract by devoting his time to finding a purchaser for said property and advertising said property for sale at his own expense." I think it did. "Though a promise may be a nudum pactum when made, because the promisee is not bound, it becomes binding when he subsequently furnishes a consideration contemplated, by doing what he was expected to do." *Brown* v. *Bowman*, 119 *Ga.* 153 (46 S. E. 410), and cit. In *Hill* v. *Horsley*,

142 *Ga.* 12 (82 S. E. 225), which was an action based upon a breach of a written contract not to cancel the authority of a real-estate agent to sell prior to a certain time, it was held that an allegation that, prior to the cancellation of the contract, "plaintiff, in endeavoring to sell the property in accordance with the contract, had incurred expenses and performed services with proper diligence," supplied, as against demurrer, a consideration for the contract. "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." Civil Code (1910), § 4242. In *Fontaine* v. *Baxley*, 90 *Ga.* 116 (17 S. E. 1015), the court held that partial performance of a contract "would satisfy the requisites both of mutuality and of the statute of frauds." The rule is stated in 4 Ruling Case Law, 319, par. 56, as follows: "Most authorities hold, that although a writing purporting to give a broker the exclusive authority to sell certain property, or promising him commission in case anyone else sells, without in express terms requiring him to do anything, is not signed by such broker, nevertheless if the latter enters upon the performance, and expends time, money, or effort, under the contract, it can not be said to be void for want of mutuality or lack of consideration, so as to prevent the broker from recovering his commission in case the land owner himself, or some one aside from the broker, sells the property in question."

But the plaintiff in error contends that his demurrer was good for the reason that the contract did not preclude a sale of the property by him. Section 3587 of the Civil Code (1910) lays down this rule: "The fact that property is placed in the hands of a broker to sell does not prevent the owner from selling, unless otherwise agreed." The contract under consideration gave plaintiff "the exclusive authority to sell." "A distinction has been raised between an exclusive agency to sell and an exclusive right to sell. Several cases in which there was merely an exclusive agency have called attention to the fact that an exclusive right was not conferred, without stating what the effect of conferring such right would be, and when that question has come squarely before the courts they have held that conferring the exclusive right to sell excluded sales by the owners themselves." 10 A. L. R. 818. "Obviously if the broker is given an exclusive right to sell, it precludes his employer from selling in any manner other than through that

particular broker's agency. The grant of merely an exclusive agency, however, does not have the effect of preventing the owner from selling independently through his own personal efforts, as it simply secures to the broker an exclusive 'agency,' that is, the employer can not sell through the medium of another broker without violating the terms of his agreement and rendering himself liable therefor." 4 R. C. L. 260, § 12. See Murphy *v.* Sawyer, 152 Ky. 645 (153 S. W. 991); Blumenthal *v.* Bridges, 91 Ark. 212 (120 S. W. 974, 24 L. R. A. (N. S.) 279); Atlantic Coast Realty Co. *v.* Townsend, 124 Va. 490 (98 S. E. 684). Section 3587 of the Civil Code, supra, does not conflict with the conclusion that the contract did preclude a sale of the property by the owner. It was "otherwise agreed."

For these reasons I do not agree to the judgment of affirmance.