A99A0448. OTI SHELF, INC. et al. v. SCHAIR & ASSOCIATES, INC.
(517 SE2d 542)

Judge Harold R. Banke.

Schair & Associates, Inc., a real estate brokerage firm, filed this multi-count complaint against OTI Shelf, Inc. (formerly Outdoor Telecommunications, Inc.), Orlando Wilson, and others. The dispute concerns whether a brokerage contract entered into between Outdoor and Schair entitles Schair to a commission as a result of Outdoor's sale of the property which is the subject of the contract.

Wilson testified that in his capacity as one of Outdoor's principals, he began trying to sell Building 100 in an office complex in 1989 and, in June 1990, received a letter from prospective buyers evidencing their intent to make the purchase. Wilson was later introduced to Schair's principal. In August, Outdoor and Schair entered into the subject contract, styled "exclusive listing agreement." In November, Wilson sold the building to a company formed by the parties who had sent the letter of intent. Wilson and the purchasers testified that Schair had no involvement whatsoever in the sale.

Under paragraph one of the listing agreement, Outdoor employed Schair as its "sole and exclusive agent" to sell the building. Under paragraph two, the initial term of the agreement began in August 1990 and ended in February 1991. If, during the term of the agreement, the property was sold or a contract for the sale was entered into by owner and a purchaser, paragraph five obligated the owner to pay the broker a commission equal to five percent of the gross sales price upon closing. If, within 60 days after expiration of the agreement, the property was sold, or a sales contract was entered with any person or persons to whom the property was actually exhibited by broker during term of the contract, paragraph six similarly obligated the owner to pay the broker the five percent commission. Paragraph ten stated that "[t]his is an exclusive right to sell agreement."

Evidence was presented by the defense showing that Wilson signed a virtually identical exclusive listing agreement employing Schair as broker for the sale of Buildings 200 and 300 in the same complex, and it was the oral understanding of all concerned that

Schair was only being employed to sell those two buildings.

Schair moved for partial summary judgment on the question of whether the agreement between it and Outdoor requires payment of a commission to it as a result of the sale of Building 100. Defendants filed a cross-motion for complete summary judgment. The court denied defendants' motion for summary judgment and granted partial summary judgment to Schair on the issue of contract construction, while expressly reserving ruling on the question of whether the agreement itself is enforceable. Outdoor and Wilson appeal. *Held*:

Our analysis of this case begins with OCGA § 10-6-32. It is comprised of two sentences, each setting forth a separate principle. The statute provides:

> The fact that property is placed in the hands of a broker to sell shall not prevent the owner from selling, unless otherwise agreed. The broker's commissions are earned when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner.

Under the statute's first principle, the rule has been well established by the courts of this State that though the owner appoints a real estate broker his exclusive agent to sell designated property, "in the absence of a contractual provision to the contrary" the owner may sell the property independently of all brokers and through his personal efforts without incurring liability to the broker for a commission. *Bradbury v. Morrison*, 93 Ga. App. 704, 706-707 (1) (92 SE2d 607) (1956); see *Irish v. Fisher*, 74 Ga. App. 631, 632-633 (40 SE2d 588) (1946). It has also been established that granting a broker an exclusive right to sell property does not, in and of itself, have the effect of preventing the owner from selling independently through his own efforts without liability for a commission. See *Barrington v. Dunwody*, 35 Ga. App. 517, 520-521 (134 SE 130) (1926) (Luke, J., dissenting). Thus, paragraphs one and ten of the parties' agreement do not alone or in combination obligate the owner to pay a commission to the broker upon sale of the property to a buyer procured by the owner.

In determining whether the remaining provisions of the agreement have such an effect, we are guided by the following rules:

> "(E)ach contract by which one employs another to sell real estate must be construed according to its particular stipulations." [Cit.] . . . "(T)he first rule that courts must apply when construing contracts, including real estate contracts,

is to look to the plain meaning of the words of the contract."
[Cit.]

*Goodman v. Frolik & Co.*, 233 Ga. App. 376, 377 (1) (504 SE2d 223) (1998).

Although the agreement in this case does not expressly state that Outdoor is obligated to pay Schair a commission if Outdoor sells the building through its own efforts, compare *Thompson v. Hudson*, 76 Ga. App. 807 (47 SE2d 112) (1948), paragraph five imposes an unqualified obligation on Outdoor to pay the commission if the property is sold during the contract term, and paragraph six then obligates Outdoor to pay the commission upon a post-expiration sale of the property only if Schair exhibited the property to the purchaser during the contract term. Viewed together, these paragraphs plainly and unambiguously establish that the owner is liable for payment of a commission if the property is sold during the term of the agreement, even if the sale is accomplished without the broker's involvement. The contract cannot be interpreted as permitting a sale of the property by the owner during the contract term without any liability to the broker for a commission, because paragraphs five and six are "contractual provision[s] to the contrary." *Bradbury v. Morrison*, supra.

Since Schair's entitlement to a commission is not predicated on its procurement of a buyer, we do not apply OCGA § 10-6-32's second principle, i.e., that the broker's commissions are earned when it procures a buyer ready, willing and able to buy on terms stipulated by the owner. See generally *Bentley Group, Ltd. v. Paces Ferry Anesthesiology Assocs.*, 180 Ga. App. 818, 819 (350 SE2d 826) (1986); compare *King-Williams Realty & Mtg. v. State Farm Life Ins. Co.*, 142 Ga. App. 620 (236 SE2d 695) (1977) (where the brokerage contract apparently required the broker to procure a purchaser). Outdoor and Wilson's reliance on *Stone v. Reinhard*, 124 Ga. App. 355 (183 SE2d 601) (1971), is misplaced as that case is a physical precedent only. Court of Appeals Rule 33 (a).

The court did not err in granting partial summary judgment to Schair on the question of contract interpretation. Additional issues raised in this appeal relate to other claims, such as whether the agreement is unenforceable because of fraud by Schair. These claims have not been ruled on by the trial court and thus are not properly before this Court for review. *Dewberry Painting Centers v. Duron, Inc.*, 235 Ga. App. 40, 42 (2) (a) (508 SE2d 438) (1998).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 7, 1999.

McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Scott H. Michalove, for appellants.

Cashin, Morton & Mullins, William T. McKenzie, for appellee.