## A04A2056. D. R. HORTON, INC. – TORREY v. TAUSCH.

(610 SE2d 151)

MILLER, Judge.

Susan Tausch sued D. R. Horton, Inc. – Torrey d/b/a Torrey Homes ("Torrey Homes") for real estate commissions that Torrey Homes allegedly failed to pay Tausch after firing her. Following a bench trial, the trial court awarded Tausch the commissions and further awarded her attorney fees. Torrey Homes appeals from this ruling. Since the undisputed evidence reveals that prior to Tausch's lawsuit Torrey Homes had already paid Tausch all of the commissions to which she was entitled under her employment contract, the trial court erred as a matter of law in failing to enforce the contract as written. We therefore reverse.

Viewed in the light most favorable to the trial court's ruling, the evidence reveals that Torrey Homes hired Tausch as a real estate sales agent on June 21, 1999. In September of that year, Tausch began selling homes in a community developed and owned by Torrey Homes. The commissioned sales agreement signed by Tausch allowed her to sell homes in the community provided that she would be an exclusive sales agent for Torrey Homes:

> For so long as [Tausch] is employed by Torrey, [Tausch] shall devote . . . her entire productive time, ability and attention to the business of Torrey. During the time [Tausch] is affili-ated with Torrey, [Tausch] shall not directly or indirectly render any services of a business, commercial, or profes-sional nature to any other person or organization, whether for compensation or otherwise, who is in competition with Torrey or any Torrey entity. . . . No bonuses or incentives or other compensation will be paid for closings after termina-tion except as is expressly provided for in this Agreement.

The agreement called for a specific commission payment structure in the event that Tausch was terminated from her employment with Torrey Homes:

> The commissions listed on Exhibit "A" [1.5% of home sales price minus a sales assistant override charge] shall be paid for all sales which *close* on or before the date of termination. For sales *closing after the date of termination*, the following schedule will apply; no bonuses or incentives will [be] paid after termination except only as follows:
>
> (i) Closings within 7 days of the date of termination, com-missions shall be paid in the amount of one hundred (100%)

percent of Schedule "A";

(ii) Closings between 8 and 30 days of the date of termination, commissions shall be paid in the amount of eighty (80%) percent of Schedule "A";

(iii) Closings between 31 and 60 days of the date of termination, commissions shall be paid in the amount of fifty (50%) percent of Schedule "A"; . . .

(iv) Closings between 61 and 90 days of the date of termination, commissions shall be paid in the amount of twenty (20%) percent of Schedule "A";

(v) Closings over 90 days after the date of termination, no commissions shall be paid. . . .

(Emphasis supplied.)

Tausch was terminated from her employment with Torrey Homes on May 30, 2000.[1] At the time she was terminated, she had negotiated 14 sales contracts for home purchase deals that had not yet closed. Only three of these fourteen deals closed within ninety days of Tausch's termination, and she was paid for the three deals consistent with the terms of the contract: eighty percent of her commission minus a sales assistant override fee for a deal that closed on June 20, 2000, and fifty percent minus an override fee for deals that closed on July 25 and July 28. She was not paid commissions for deals that did not close within 90 days or did not close with the original buyer.

Tausch then sued Torrey Homes for full commissions on all of the 14 properties. Following a bench trial, the trial court ruled in favor of Tausch, awarding her the commissions for all 14 houses and awarding her attorney fees. Torrey Homes appeals.

1. Torrey Homes argues that it properly paid Tausch under its employment contract with her and that Tausch was not entitled to any commissions beyond those that she had already been paid following her termination. We agree.

"Each contract by which one employs another to sell real estate must be construed according to its particular stipulations. The first rule that courts must apply when construing contracts, including real estate contracts, is to look to the plain meaning of the words of the

---

[1] Torrey Homes claims that Tausch was fired for "lack of job performance." While Tausch disputes the claim that her job performance was lacking, such dispute is irrelevant here, because Tausch's employment contract with Torrey Homes specifically states that the "agreement may be terminated by either party at any time, with or without cause. . . ."

contract." (Citations and punctuation omitted.) *OTI Shelf v. Schair & Assoc.*, 238 Ga. App. 12, 13-14 (517 SE2d 542) (1999). The matter of contract construction is a question of law for the Court that is subject to de novo review. *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

Further, where an express contract controls the conditions under which real estate commissions are to be paid, the so-called "procuring cause" doctrine, entitling a broker to commissions as soon as she finds a ready, able, and willing buyer, does not apply. See OCGA § 10-6-32; *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162, 164 (2) (332 SE2d 920) (1985). As this Court explained in *O'Brien's Irish Pub*, supra:

> [T]he cases dealing with entitlement to commission by proving that the agent was the "procuring cause" of the sale generally apply in the absence of an exclusive contract to sell. The plaintiff and the defendant having entered into an express contract creating the relationship of exclusive sales agency, the provisions of OCGA § 10-6-32 are not applicable. This Code section embodies the implied obligation of a property owner to pay a commission to his broker when there has been a simple listing of the property with the broker, and is not applicable when the obligation to pay a commission has been expressly agreed upon; in such cases the terms of the express agreement control.

(Citations and punctuation omitted.) Id. at 164 (2).

Here, contrary to Tausch's arguments and the conclusions reached by the trial court, Tausch was not entitled to commissions as the "procuring cause" of home sales that ultimately closed after Tausch's employment with Torrey Homes ended. As an exclusive agent for Torrey Homes, the express terms of Tausch's contract controlled her commission payments, and such terms clearly state that Tausch was only entitled to receive 100%, 80%, 50%, or 20% of her commissions (minus override fees) for sales that *closed* within 90 days of her employment termination. The undisputed evidence reveals that Tausch was paid consistent with the express terms of the agreement following her termination. Thus the trial court erred in concluding that Tausch was entitled to commissions that were outside of the scope of the express contract terms. The judgment in favor of Tausch must therefore be reversed and the case remanded to the trial court with the direction that judgment be entered in favor of Torrey Homes.

2. In light of our holding in Division 1, the trial court's award of attorney fees to Tausch was also in error (see *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 529 (3) (543 SE2d 32)

(2001) (party that does not prevail on any of its claims cannot obtain attorney fees)), and we need not reach Torrey Homes's remaining enumerations.

*Judgment reversed and case remanded with direction. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 4, 2005 — 

*Johnson & Hobgood, Thomas T. Hobgood, Allison W. Maffei*, for appellant.

*Michael S. Webb*, for appellee.