A10A0562. GEORGIA REAL ESTATE PROPERTIES, INC.
v. LINDWALL et al.
(692 SE2d 690)

JOHNSON, Presiding Judge.

This is an appeal from the grant of summary judgment in favor of a property seller and buyer in a broker's action to recover a sales commission. For the reasons that follow, we affirm.

On review of a grant of summary judgment, we apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant.[1] If there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, summary judgment is proper.[2]

Construed in the proper light, the evidence shows that Lens Corporation and L & S Development Company owned approximately 8.23 acres of real property. Richard Lindwall is president of both Lens Corporation and L & S Development, Wyona Stephens is secretary of L & S Development, and David Lindwall is vice-president of Lens Corporation. Lens Corporation and L & S Development entered into a listing agreement for the sale of the property with broker Charles Morris. In 1999, Morris gave Richard Lindwall's neighbor, Carl Martin, a flyer notifying him that the property was for sale. Martin was not interested in buying the property at the time.

In March 2000, when the listing agreement with Morris expired, Lens Corporation and L & S entered into an exclusive listing agreement with the broker who is a party to this case, Phil Carter of Georgia Real Estate Properties, Inc. ("GREP"). The agreement was extended several times, with the most recent listing agreement being in effect from September 21, 2005 to March 21, 2006.

The agreement provides, in relevant part, that the owner will pay the broker, as compensation for services, an eight percent sales commission if: (1) the broker procures a purchaser during the term of the agreement, (2) the property is withdrawn from sale, this

---

[1] *Nat. Bus. Acquisitions v. Mandula*, 245 Ga. App. 14, 15 (1) (537 SE2d 162) (2000).
[2] Id.

authorization is revoked during the term, or if the owner otherwise prevents the performance of the agreement by the broker, or (3) a sale is made within six months after the termination of the agreement with persons with whom the broker negotiated during the term and whose names the broker submitted in writing to the owner within ten days after termination of this agreement. The agreement further provides that the owner agrees to commit no act which might obstruct the broker's performance under the contract, to refer all inquiries concerning the sale of the property to the broker during the term of the agreement, and otherwise cooperate with the broker.

One day, between March 27 and March 31, 2006, Richard Lindwall stopped by Martin's office. During this visit, Martin expressed an interest in buying the property. On April 11, 2006, Martin gave Richard Lindwall an earnest money check to hold the property. On April 24, 2006, Richard Lindwall (as president of L & S Development and Lens Corporation) and Martin (as president of William Taylor Properties, Inc.) signed an agreement for the sale of the property. William Taylor Properties assigned the right to purchase the property to Interstate Investment Properties, Inc., of which Martin was CEO. The sale closed on May 24, 2006. GREP did not receive a commission on the sale.

Claiming it was entitled to receive a sales commission, GREP sued the Lindwalls, Stephens, Lens Corporation, and L & S Development (collectively, "the Lindwall defendants"), as well as Martin and Interstate Investment. In the suit, GREP alleged it was the procuring cause of the sale, and that the Lindwall defendants breached the listing agreement and an implied contract to pay the reasonable value of its services. GREP further alleged that the Lindwall defendants, Martin, and Interstate Investment were liable for conspiring to deprive GREP of the sales commission. GREP also demanded punitive damages and attorney fees.

The Lindwall defendants moved for summary judgment, stating there was no evidence that GREP procured the sale, the sale occurred after the contract expired without GREP having negotiated with Martin or having timely submitted Martin's name after the agreement expired, and the Lindwall defendants did not prevent GREP from performing under the contract. The Lindwall defendants also argued that the procuring cause doctrine and the implied contract doctrine do not apply because there is an express contract, a cause of action for conspiracy does not lie where no commission is due, and there is no evidence of a conspiracy.

Martin and Interstate Investment also moved for summary judgment. They argued that they could not be liable for breach of contract inasmuch as they were not parties to the listing agreement, GREP was not the procuring cause of the sale, GREP neither had an

implied contract with nor rendered any valuable service to them, and there could be no conspiracy where no commission was due. GREP appeals from the trial court's grant of both motions for summary judgment.

1. *Breach of listing agreement.* Each contract by which one employs another to sell real estate must be construed according to its express terms.[3] The first rule that courts must apply when construing contracts is to look to the plain meaning of the words of the contract.[4] In this case, the agreement only requires payment of a sales commission when (a) the broker procures a purchaser during the listing period on the terms specified or any other terms acceptable to the owner, (b) the owner acts to prevent the broker's performance, or (c) a sale occurs within six months after the agreement expires to a person with whom the broker negotiated during the term and whose name the broker submitted in writing to the owner within ten days of the expiration date. There is no evidence that any of these conditions occurred.

The evidence shows that Martin was first informed that his neighbor's property was for sale in 1999 not by GREP, but by the previous broker. The new broker, Carter, testified that he asked Martin during the listing period "why didn't he go ahead" and buy the property, but Martin had "no interest." Thus, there is no evidence that GREP procured the purchaser of the property.

Nor is there evidence that the Lindwall defendants took any action to prevent GREP from performing under the agreement. GREP urges that Richard Lindwall failed to report inquiries he received during the listing period, but there is no evidence that Richard Lindwall received any inquiries on or before the March 21, 2006 expiration date. At most, the evidence shows that Martin expressed to Richard Lindwall an interest in the property during Richard Lindwall's visit between March 27 and March 31, 2006, and that Martin's father talked to Richard Lindwall about the property "a few days" before that. However, that testimony does not show there were inquiries on or before March 21, 2006. A jury could not find from the evidence that Richard Lindwall knew of inquiries on or before the expiration date without relying on speculation or guesswork. Speculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment.[5]

Similarly, Richard Lindwall's testimony that he "had some

---

[3] *Oti Shelf, Inc. v. Schair & Assocs.*, 238 Ga. App. 12, 13 (517 SE2d 542) (1999).

[4] Id. at 13-14.

[5] *Holder Constr. Group, LLC v. Ga. Tech Facilities*, 282 Ga. App. 796, 799 (1) (640 SE2d 296) (2006).

conversations" about the property "before" the time he stopped by Martin's office fails to show an inquiry during the listing period. No specific or approximate dates are given, and Richard Lindwall was surprised when, during his visit between March 27 and March 31, 2006, Martin said he "might want to purchase" the property. Finally, there is no evidence that GREP negotiated with Martin during the contract period or that GREP submitted Martin's name to Richard Lindwall within ten days of the contract's expiration date. The trial court did not err in granting summary judgment to the Lindwall defendants on the breach of contract claim.

2. *Procuring cause.* The common law "procuring cause" doctrine entitles a broker to a commission as soon as he finds a ready, able, and willing buyer.[6] In this case, the common law doctrine is inapplicable because there was an express contract that addressed "procuring cause"[7] and, as discussed above, GREP was not the procuring cause of the sale. Therefore, the defendants were entitled to summary judgment on this claim.[8]

3. *Breach of implied contract/quantum meruit.* "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. A plaintiff is estopped to recover on quantum meruit where there exists an express agreement."[9]

Thus, in light of the existence of an express listing agreement, GREP cannot recover in implied contract or quantum meruit against the Lindwall defendants. And GREP cannot recover in quantum meruit against Martin and Interstate Investment because, as discussed above, GREP was not the procuring cause of the completed transaction.[10] The trial court correctly granted summary judgment against GREP on this claim.

4. *Conspiracy.* Where no commission is due, a claimed conspiracy to deprive the broker of the commission does not create a claim for relief.[11] GREP has not shown it was entitled to receive a commission. And, if no cause of action is otherwise alleged, the addition of allegations concerning conspiracy will not make one.[12] Thus, the trial court did not err in granting summary judgment in favor of the

---

[6] *D. R. Horton, Inc. – Torrey v. Tausch*, 271 Ga. App. 511, 513 (1) (610 SE2d 151) (2005).

[7] *B & R Realty v. Carroll*, 245 Ga. App. 44, 45-46 (2) (a) (537 SE2d 183) (2000) (physical precedent only).

[8] See *D. R. Horton, Inc. – Torrey*, supra.

[9] (Citations and punctuation omitted.) *B & R Realty*, supra at 47 (4); *D. R. Horton, Inc. – Torrey*, supra.

[10] *Amend v. 485 Properties*, 280 Ga. 327, 330 (627 SE2d 565) (2006).

[11] *B & R Realty*, supra at 47 (3).

[12] Id.

Lindwall defendants, Martin or Interstate Investment as to the conspiracy claim.[13]

5. *Punitive damages and attorney fees.* Because punitive damages and attorney fees are derivative of claims on which GREP cannot prevail, those claims also fail.[14]

*Judgment affirmed. Miller, C. J., and Phipps, J., concur.*

DECIDED MARCH 22, 2010.

*Carothers & Mitchell, Thomas M. Mitchell*, for appellant.

*Mahaffey, Pickens & Tucker, Matthew P. Benson, Stephanie L. Curd*, for appellees.

---

[13] See *Parrish v. Ragsdale Realty Co.*, 135 Ga. App. 491, 495 (6) (218 SE2d 164) (1975).

[14] See *B & R Realty*, supra; *D. R. Horton, Inc. – Torrey*, supra at 513-514 (2).

